(No. 63893.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. VICTOR WILLIAMS, Appellee.

*Opinion filed November 16, 1987.*

408

CUNNINGHAM, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., and John J. Mahoney, Assistant State's Attorneys, of counsel), for the People.

Paul P. Biebel, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, Victor Williams, was convicted of

rape and armed robbery. The trial judge sentenced the defendant to concurrent terms of 15 years' imprisonment. The appellate court reversed the defendant's conviction for armed robbery, finding that his guilt for that offense had not been proved beyond a reasonable doubt. (145 Ill. App. 3d 482.) We allowed the State's petition for leave to appeal. 107 Ill. 2d R. 315(a).

The offenses here occurred in Chicago on June 25, 1979. Shortly after midnight, the victim and her fiance went to the apartment of the victim's mother to pick up the victim's daughter, who had stayed there that evening. The three left the apartment between 12:15 and 12:30 and, because the building elevators were not in service, descended the stairs. As they reached the third floor, the victim realized that she had left her purse in her mother's apartment, and she then went back upstairs, alone, to retrieve it.

The victim testified that when she reached the twelfth floor, where her mother's apartment was located, she noticed a man, whom she later identified as the defendant, wrapping a length of clothesline around his hand. The victim walked by the defendant, glanced back at him, and looked forward again. The defendant then grabbed the victim from behind and held a knife to her throat with one hand while he clamped his other hand over her mouth. The defendant threatened to kill the victim, and he pulled her to the stairwell and down the stairs.

The defendant took the victim to the ninth floor of the building. There, he fumbled with some keys and then pushed the victim into a laundry room. After blindfolding and gagging the victim and tying her hands, the defendant ripped the victim's clothing from her and raped her. The defendant also struck the victim in the face several times and threatened to kill her. After the attack, the defendant commented that he had lost the

sheath for his knife. The defendant then turned on the light in the room, untied the victim's hands, and left. The victim removed the blindfold and gag, put on her jeans and jacket, and ran down the stairs and out the building.

The defendant was arrested on the sixth floor of the building by a police officer who had been flagged down by the victim's fiance when she failed to appear. A pat-down search of the defendant revealed a knife with the word "Buck" on it; also found on the defendant were a gold chain necklace belonging to the victim, an identification card, a set of keys, and a length of rope. One of the keys was found to work the lock on the door of the laundry room where the attack occurred. A knife sheath with the word "Buck" on it was found on the twelfth floor of the building. The defendant made several exculpatory statements to the police. The defendant also testified at trial, and he gave an exculpatory explanation for his presence in the building.

In an earlier appeal, the appellate court had reversed, in an unpublished decision, the trial court's order granting the defendant's motion to quash his arrest. (95 Ill. App. 3d 1201 (unpublished Rule 23 order).) On remand, the defendant's motion to suppress the victim's identification testimony was denied, and he was convicted of the offenses here. The appellate court affirmed the denial of the suppression motion, affirmed the defendant's rape conviction, and, with one justice dissenting, reversed the conviction for armed robbery, finding that the State failed to present sufficient evidence to establish how or when the defendant came into possession of the victim's necklace. In this appeal, the State asks that the armed robbery conviction be reinstated. The defendant raises the suppression motion as a ground for relief. See 107 Ill. 2d R. 318(a).

The appellate court affirmed the trial court's ruling denying the defendant's motion to suppress the victim's lineup and in-court identification of the defendant. The defendant renews here the argument he made in the appellate court, that the victim's lineup and in-court identifications of the defendant resulted from a suggestive procedure.

Shortly after the assault, the victim was taken to a police station. There, a police officer placed on a table in front of the victim the items that had been taken from the defendant, including the victim's necklace and an identification card of the defendant. The victim immediately identified the necklace as one she had been wearing earlier that night. It is uncontested that the victim also observed the identification card, which was a wallet-sized item bearing a photograph of the defendant. There was testimony both that the officer showed the card to the victim and asked her whether she recognized the person, and that the victim pointed to the card without prompting and identified the defendant as her assailant. Later in the day the victim returned to the police station and viewed a five-man lineup. She identified the defendant as her assailant, and at trial she made an in-court identification of the defendant.

The defendant contends here that the victim's viewing his identification card was a suggestive procedure that tainted the victim's later lineup and in-court identifications. When an unnecessary and suggestive pretrial identification procedure occurs, a witness' subsequent identification testimony may be introduced only if the State can show by clear and convincing evidence that, based on the totality of the circumstances, the witness' initial identification made under the suggestive procedure was reliable. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 110 n.10, 53 L. Ed. 2d 140, 151 n.10, 97 S. Ct. 2243, 2251 n.10; *People v. Manion* (1977), 67 Ill. 2d 564,

571-72.) Circumstances relevant in making that determination include the opportunity of the witness to view the assailant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the offender, the level of certainty demonstrated by the witness at the suggestive confrontation, and the length of time between the offense and the suggestive confrontation. *People v. Bryant* (1983), 94 Ill. 2d 514, 520-21.

The evidence in this case shows that the victim initially viewed the defendant under good lighting conditions. The victim testified that the defendant was only about 5 to 10 feet from her when she initially saw him, and she described the lighting as "very good." The victim testified further that she walked by the defendant and then looked at him a second time. That the victim saw her attacker's face for only several seconds did not preclude her from making a positive identification. (See *People v. Williams* (1981), 96 Ill. App. 3d 958; *People v. Sakalas* (1980), 85 Ill. App. 3d 59; *People v. Harrison* (1978), 57 Ill. App. 3d 9; *People v. Hahn* (1976), 39 Ill. App. 3d 969.) There was an adequate opportunity here for the victim to view the defendant in the hallway; she was apprehensive, and her attention was focused on him.

The victim gave the police a description of the assailant minutes after the offenses occurred. A police officer testified that the victim said that her attacker was a black male who was armed with a knife and was wearing a black leather jacket. The officer also stated that the victim described the assailant's height by indicating on her body how tall the attacker was. We do not believe that the description of the assailant was too vague and general to undermine the reliability of her later identifications. The victim gave the description moments after the offenses occurred, and under the circumstances here it was justifiably vague. (See *People v. Manion* (1977), 67

Ill. 2d 564, 572.) Moreover, the failure of the victim to mention that her assailant had a mustache and facial hair, as the defendant had, does not render her otherwise positive identification unreliable. See *People v. Catlett* (1971), 48 Ill. 2d 56, 63.

Finally, the level of certainty demonstrated by the victim at the suggestive procedure and the length of time between the occurrence and the suggestive confrontation also strongly indicate that the victim's identification of the defendant from his identification card was reliable. The victim viewed the card within an hour and a half of the offenses, and she identified the person in the photograph as the man who had assaulted her. There was little, if any, prompting of the victim to make an identification. (See *People v. Bryant* (1983), 94 Ill. 2d 514, 521.) The only suggestion of that came in testimony that a police officer showed the card to the victim and asked her if she recognized the person in the photograph.

Under the circumstances in this case, we believe that the victim's initial identification, made from the photographic identification card, of the defendant as the offender was reliable. Because any identification made by a witness in the wake of a reliable out-of-court identification is also reliable (*Manson v. Brathwaite* (1977), 432 U.S. 98, 110 n.10, 53 L. Ed. 2d 140, 151 n.10, 97 S. Ct. 2243, 2251 n.10; *People v. Manion* (1977), 67 Ill. 2d 564, 572), the victim's subsequent lineup and in-court identifications of the defendant were therefore admissible.

The appellate court reversed the defendant's conviction for armed robbery because "there was no evidence to prove how or when the defendant came into possession of the victim's necklace, or to show that the defendant demanded money or any other property from the victim" (145 Ill. App. 3d 482, 489). The State contends

that the evidence in this case was sufficient for the jury to find the defendant guilty of that offense.

A person commits robbery "when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1979, ch. 38, par. 18—1(a).) Armed robbery is the commission of robbery while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a).) The elements of the offense may, of course, be proved by circumstantial evidence. *People v. Taylor* (1984), 101 Ill. 2d 508, 514; *People v. Susanec* (1947), 398 Ill. 507, 513.

The defendant first claims that there was no proof that the necklace was taken from the victim or her presence. We disagree. The victim testified that she was wearing the necklace when she was forced into the laundry room. There, the defendant pushed her to the floor, tied her hands, and forcibly removed her clothing. The defendant struck the victim in the face several times and sexually assaulted her. The jury could have inferred from those circumstances either that the necklace was taken during the sexual assault, or that it came off during the assault and was picked up by the defendant before he left the room.

The defendant makes the related contention that the State failed to prove that force or the threat of force was used to effect the taking of the necklace. The defendant points out that there was no evidence of a demand for money or property from the victim and that the victim was unable to say at what point in the ordeal the necklace was taken.

Force or the threat of force is an element of the offenses of robbery and armed robbery (Ill. Rev. Stat. 1979, ch. 38, pars. 18—1, 18—2), and this court had held that the necessary force or threat of force must be used as a means of taking the property from the victim. (*People v. Tiller* (1982), 94 Ill. 2d 303, 316.) In *Tiller*, the

defendant was convicted of murder, on an accountability theory, and of armed robbery for his taking the murder victim's vehicle. The defendant had left the scene before the murder was committed by a codefendant and only later returned to take the vehicle, a mail jeep, which was parked nearby. The court ruled that the force used in the commission of the murder would not sustain the defendant's conviction for armed robbery because "there [was] no evidence to show that the force exerted against [the victim] was for the purpose of depriving her of the mail truck or the mail in it." 94 Ill. 2d 303, 316.

We do not believe that the instant case is governed by *Tiller*, for here the offenses were essentially a single series of continuous acts committed by the defendant. The victim testified that she was wearing the necklace at the time she was pushed into the laundry room, and we have already found that the jury could have inferred that the necklace was taken from the victim or her presence during or immediately after the attack. In the assault, the defendant bound, gagged, and blindfolded the victim, struck her and raped her, and threatened to kill her. Whether the defendant took the necklace from the victim's person or whether he picked it up off the floor after committing the assault, we believe that in this case there was the necessary concurrence between the defendant's use or threat of force and his taking of the necklace to give rise to the offense of armed robbery under the statute. See 2 LaFave, Substantive Criminal Law sec. 8.11(e), at 452-54 (1986).

In reviewing the sufficiency of the evidence to sustain a conviction, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. (See *People v. Collins* (1985), 106 Ill. 2d 237, 261.) We conclude that the jury could have found beyond a reasonable doubt

from the evidence presented here that the defendant took the necklace from the person or presence of the victim by force or the imminent threat of force.

For the reasons stated, we affirm that part of the appellate court's judgment affirming the defendant's conviction for rape, and we reverse that part of the appellate court's judgment reversing the defendant's conviction for armed robbery; the defendant's convictions are affirmed. In the appellate court the defendant also raised an argument concerning the propriety of the sentences imposed by the trial judge for the two convictions. The appellate court did not consider the question, however, and the parties have not addressed it in their briefs in this court. Accordingly, we remand the cause to the appellate court for consideration of that additional issue.

*Appellate court affirmed in part and reversed in part; circuit court affirmed; cause remanded.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.