THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL CLEMONS, Defendant-Appellant.

Second District   No. 2—87—0428

Opinion filed February 10, 1989.

G. Joseph Weller and Beth Katz, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Daniel Clemons, was charged by indictment with three counts of murder and one count of armed robbery. A jury rejected his insanity defense and found him guilty but mentally ill of two counts of murder and one count of armed robbery, but not guilty of murder during the course of armed robbery. Defendant received a concurrent sentence of an extended term of 80 years' imprisonment for murder and an extended term of 60 years' imprisonment for armed robbery.

Defendant raises four issues on appeal: (1) whether placing the burden on defendant to prove his insanity by a preponderance of the evidence unconstitutionally shifts the burden of proof to defendant; (2) whether defendant was proved guilty beyond a reasonable doubt of armed robbery where defendant's original intent was murder and only after he inflicted deadly blows upon his victim did he decide to take a dollar; (3) whether defendant's extended-term sentence of 80 years' imprisonment for murder should be reduced; (4) whether defendant's extended-term sentence of 60 years' imprisonment for armed robbery must be reduced where it was not the most serious offense for which he was convicted. We affirm.

During trial, defendant's tape recorded statement to the police in which he admitted killing his father was played to the jury. That statement revealed the following: On May 8, 1986, defendant waited in his father's house for his father to come home. When his father arrived, defendant hit him over the head twice with a hammer and then stabbed him in the stomach. Defendant then left the house and went to a bar and had a beer. He returned to the house to get some food stamps and found the knife he had left in his father's stomach lying on the floor. Defendant stated that he thought his father could still be alive so he covered his father with a blanket and hit him over the head with a sledge hammer. Then defendant returned to the bar where he phoned his sister to request that she go to their father's house to turn off the stove, which resulted in the discovery of the body.

Defendant also admitted to taking a dollar from his father's wal-

let at some point during one of the beatings. Defendant's statement does not make clear whether he took the dollar immediately after the first beating or if he took the dollar after returning to the house from the bar. In one part of his statement, defendant said he told his father he was going to get some money out of him after he first started hitting him. He also states, however, that he took the dollar after he returned from the bar.

Testifying for the defense, Dr. Leo Goldman, a psychiatrist, testified defendant was probably schizophrenic and might also suffer from organic brain disease. He stated defendant had a low IQ of 70 that would affect his ability to cope with schizophrenia. Goldman concluded defendant was not able to appreciate the criminality of his conduct when he killed his father. Dr. Marshall Silverstein, a clinical psychologist, testified defendant was unable to conform his behavior to the requirements of the law on May 8, 1986. In rebuttal, the State called Dr. Henry Lahmeyer, a psychiatrist, who testified that none of the defendant's mental problems interfered with his ability to understand the criminality of his actions.

■ Defendant first contends that section 6—2(e) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e)) unconstitutionally shifts the burden of proof to a defendant to prove by a preponderance of the evidence that he is insane. This court recently rejected this argument in *People v. McDarrah* (1988), 175 Ill. App. 3d 284, 294, pointing out that several decisions of our courts, as well as the United States Supreme Court in *Leland v. Oregon* (1952), 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002, have recognized the constitutionality of placing the burden of proof on defendant to prove insanity by a preponderance of the evidence.

*McDarrah* also rejected a contention similar to defendant's in this case that *Leland* is distinguished because the jury in that case was instructed to consider the defendant's evidence on insanity with all the other evidence in regard to defendant's ability to premeditate, form a purpose, to deliberate, act wilfully, and act maliciously. (*McDarrah*, 175 Ill. App. 3d at 295.) As in *McDarrah*, the defendant here contends that the absence of an instruction similar to the one in *Leland* denied defendant due process since the jury was instructed pursuant to section 6—2(e) that it could not consider whether defendant met his burden of proving insanity until it first determined that the State proved defendant guilty beyond a reasonable doubt (Ill. Rev. Stat. 1985, ch. 38, par 6—2(e)). The court's rejection of this argument, quoted below, is dispositive:

"Although section 6—2(e) precluded the jury from considering

whether defendant *sustained his burden of proving insanity* until it first determined whether the State sustained its burden of proving all of the elements of the offense, nothing in that statute or in the instructions given in this case precluded the jury from *using defendant's evidence* to find one of the State's elements (*i.e., mens rea*) missing. (See Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e).) *** Accordingly, we hold that section 6—2(e), placing the burden of proving insanity on defendant and requiring that the jury be instructed to first determine whether the State met its burden of proving defendant guilty beyond a reasonable doubt before considering whether defendant sustained his burden of proving insanity, is constitutional." (Emphasis in original.) *McDarrah*, 175 Ill. App. 3d at 295.

▉▉▉ Defendant next contends that the evidence does not support his conviction of armed robbery for taking a dollar from the victim because his use of force against the victim was for the purpose of murder, not robbery. A person commits robbery "when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(a).) Armed robbery is the commission of robbery while armed with a dangerous weapon. Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a).

Defendant argues that this case is similar to *People v. Tiller* (1982), 94 Ill. 2d 303, 316, *cert. denied* (1983), 461 U.S. 944, 77 L. Ed. 2d 1302, 103 S. Ct. 2121, where the court held that the use of force or threat of force must be used as a means of taking the property from the victim. In *Tiller*, defendant was convicted of murder on an accountability theory and of armed robbery for taking the murder victim's vehicle. The defendant had left the scene before the murder was committed by a codefendant and only later returned to take the vehicle which was parked nearby. The court held that the force used in the commission of the murder would not sustain the defendant's conviction for armed robbery because "there [was] no evidence to show that the force exerted against [the victim] was for the purpose of depriving her of the [vehicle]." *Tiller*, 94 Ill. 2d at 316.

This case is distinguishable from *Tiller*, as demonstrated by the recent supreme court case, *People v. Williams* (1987), 118 Ill. 2d 407, 416. In *Williams*, a defendant found guilty of rape was also found guilty of armed robbery for taking the victim's necklace. The appellate court, citing *Tiller*, reversed; it held that the State failed to present sufficient evidence to establish how or when the defendant came into possession of the victim's necklace. (*People v. Williams*

(1986), 145 Ill. App. 3d 482, 490.) The supreme court reversed this decision, stating:

> "We do not believe that the instant case is governed by *Tiller*, for here the offenses were essentially a single series of continuous acts committed by the defendant. \*\*\* In the assault, the defendant bound, gagged, and blindfolded the victim, struck her and raped her, and threatened to kill her. Whether the defendant took the necklace from the victim's person or whether he picked it up off the floor after committing the assault, we believe that in this case there was the necessary concurrence between the defendant's use or threat of force and his taking of the necklace to give rise to the offense of armed robbery under the statute." *Williams*, 118 Ill. 2d at 416.

As in *Williams*, the evidence in this case establishes a series of acts committed by defendant where the necessary concurrence between defendant's use of force and his taking of the dollar gives rise to the offense of armed robbery. Defendant beat his father over the head twice with a hammer, stabbed him in the stomach, and beat him with a sledge hammer. At some point during these beatings defendant took a dollar from his father. Defendant's taped statement to the police establishes that he used this force not only as a means to kill, but also as a means to take property. Defendant said the following:

> "SERGEANT HENDLEY: Is that when you came back and got the food stamps and the dollar out of his pocket?
>
> DEFENDANT: Yes. Now I took the dollar out of his pocket first. I hit him and all that. I—, you know—I, you know, said that's what they're all telling me. You know, I'm broke all month. And I said yeah, I'm gonna get some money out of you. I was mad. I say I'm gonna take some money from you.
>
> SERGEANT HENDLEY: When you first started hitting him?
>
> DEFENDANT: Yeah."

In reviewing the sufficiency of the evidence to sustain a conviction, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the elements of the crime beyond a reasonable doubt. (*Williams*, 118 Ill. 2d at 416.) From defendant's statement to the police, the jury could have found beyond a reasonable doubt that defendant used a dangerous weapon against his father as a means to take property from him.

Though defendant's statement does not make clear whether he took the dollar immediately after the first attack or whether he took

it after returning to the house from the bar, a point at which his father was already dead, either case supports the jury's verdict. In *Williams* the court held that even if the necklace was picked up from the floor after the attack, the necessary concurrence between defendant's use of force and his taking the necklace was present. (*Williams*, 118 Ill. 2d at 416.) In this case, even if defendant did not take the dollar until after he returned from the bar, the necessary concurrence between the use of force and the taking would still exist since the taking of the dollar resulted from the use of force from the first attack.

■ Defendant also contends that the jury's verdict of not guilty of felony murder in the commission of armed robbery is inconsistent with a guilty verdict for armed robbery and proves that the jury actually found that force was not used in taking the dollar. There is no merit to this argument. The verdicts are not legally inconsistent. It is likely that the jury acquitted defendant on this felony murder count because defendant's original intent was murder rather than robbery. Thus, the jury found that this was not a case where the murder arose out of a primary purpose to commit armed robbery. This finding does not negate the jury's verdict of guilty for armed robbery; rather, it shows that the jury believed that defendant developed the purpose of robbery after he began attacking his father to kill him. Thus, the jury concluded that defendant's use of force carried out two purposes, murder and then robbery, but since the original purpose was murder, it could not find defendant guilty of murder while in the commission of armed robbery.

■ ■ In his third issue, defendant asks this court to reduce his sentence of an extended term of 80 years' imprisonment for murder (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(1)). A sentence will be reduced by a reviewing court only if the trial court has abused its discretion and the sentence constitutes a substantial departure from the law. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153; *People v. Rogers* (1986), 141 Ill. App. 3d 374, 381-82.) When the sentence imposed is within the limits established by the legislature, it will not be modified merely because a reviewing court might have balanced the appropriate factors differently and imposed a different sentence. *People v. Dunnegan* (1987), 151 Ill. App. 3d 973, 985.

Defendant's sentence of an extended term of 80 years' imprisonment for murder does not constitute an abuse of discretion by the trial court. An extended term may be imposed for murder where the "offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1985, ch. 38, par.

1005—5—3.2(b)(2).) The trial court's finding that this was an exceptionally brutal murder indicative of wanton cruelty is clearly supported by the evidence that defendant beat the victim first with a hammer, then a knife, and finally a sledge hammer. Furthermore, the record does not support defendant's contention that the court did not give adequate consideration to two factors: (1) the low recidivism rate for this type of offense; (2) the strides modern science could make to help defendant with his mental impairments. The trial judge mentioned these factors in sentencing defendant, but found that it was not likely that defendant could be rehabilitated. Nonetheless, the judge did consider these factors as reason not to impose a life sentence or a consecutive sentence.

■ Finally, defendant correctly contends that his extended sentence of 60 years' imprisonment for armed robbery must be reduced because an extended-term sentence may only be imposed for "the class of the most serious offense of which the offender was convicted." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a); *People v. Jordan* (1984), 103 Ill. 2d 192, 206; *People v. Treece* (1987), 159 Ill. App. 3d 397, 417.) Since defendant was sentenced to an extended term for murder, he cannot be sentenced to an extended term for robbery. Accordingly, defendant's sentence of 60 years' imprisonment should be reduced to 30 years' imprisonment, the maximum non-extended term for armed robbery, a Class X felony (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3)).

The judgment of the circuit court of Lake County is affirmed, and the sentence is affirmed as modified.

Affirmed as modified.

UNVERZAGT, P.J., and INGLIS, J., concur.