THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER SAUNDERS, Defendant-Appellant.

First District (1st Division)   No. 1—89—3410

Opinion filed September 14, 1992.

Randolph N. Stone, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Eileen M. O'Neill, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Following a bench trial, defendant was convicted of murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)), home invasion (Ill. Rev. Stat. 1989, ch. 38, par. 12—11(a)(1)), armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)), and attempted rape (Ill. Rev Stat. 1983, ch. 38, par. 11—1(a)). He was sentenced to natural life on the murder conviction and an aggregate consecutive term sentence of 75 years' imprisonment on the remaining convictions.

On appeal, defendant contends that the trial court erred when it denied his motion to suppress statements made to the police in violation of his fifth and sixth amendment constitutional rights. He also raises an issue regarding the sufficiency of the pleadings claiming the trial court erred when it allowed the new indictment (89—CR—23714) to supersede the original indictment (87—CR—8167), because prosecution of all the offenses except murder was barred by the period of limitations.

In addition, defendant maintains that the evidence was not sufficient to prove him guilty beyond a reasonable doubt on the offenses of

armed robbery and attempted rape. Defendant also assigns as error the trial court's imposition of a sentence of natural life without parole plus a consecutive term of 75 years' imprisonment. We affirm defendant's convictions and sentences.

BACKGROUND

During the bench trial the victim's daughter, Joanne, testified that on June 22, 1983, after she could not reach her mother on the telephone, she and her daughter came to the apartment and when no one answered, let herself in with an extra key. Joanne noticed the apartment was in a mess and also saw her mother covered with blood lying on the floor of the bedroom. A neighbor, Robert, hearing Joanne's screams, came out into the hallway and summoned Joanne to find the janitor and call the police. Robert then entered the apartment and called the police himself. From the foyer of the apartment, he saw the victim lying on the floor of the bedroom.

The investigating police officers searched the apartment, photographed each room, lifted fingerprints, and inventoried several items, including articles of clothing, a bloodstained towel, iron, bent frying pan, and kitchen knife. The officers canvassed the apartment building and discovered that a young black male who called himself "Andy" was seen on June 21 and June 22, knocking on the doors of several apartments where he sought sponsors for a walk-a-thon. The State also presented the testimony of several residents who described the same teenager as the person who solicited money from them for a walk-a-thon.

The State also presented the testimony of Officer O'Neill, a latent fingerprint examiner who, after submitting an enhanced pencil drawing of the fingerprints found in the victim's apartment, obtained a list of likely candidates whose prints were similar to those obtained from the Automated Fingerprint Identification System (AFIS). O'Neill stated that after receiving the AFIS list, he then pulled the fingerprint card of defendant and determined that those recovered from the victim's apartment were also those of the defendant. O'Neill informed Detective Markham of the results of the examination on or about November 20, 1986. Markham then located defendant's mother and discovered that defendant was living in California.

It was determined that defendant had been arrested in California on May 28, 1985, and was in custody and represented by appointed counsel. On December 3, 1986, Markham along with Detective Hood of the Chicago police department travelled to California and, along with police officer Gibson of Los Angeles, conducted an interview of

the defendant about the murder in Chicago. At that time, defendant gave a full statement implicating himself. On December 5, 1986, defendant pleaded guilty to the charges in California and was sentenced to eight years' imprisonment. On December 9, 1986, defendant allegedly called the Chicago police and questioned them about when he would be extradited to Chicago.

On June 9, 1987, the Chicago police took custody of defendant in California and brought him to Chicago, where he made an inculpatory statement before them that evening and again before Assistant State's Attorney Norwell and a court reporter the following day. At trial, defendant's statement was published into the record by Ms. Norwell.

According to the statement, at approximately 8 a.m. while on his way to school, defendant detoured to an apartment building at Dearborn Park. He knocked on several doors in the building; however, no one answered. He then knocked on the victim's apartment door and asked her to sponsor him in a walk-a-thon. After she invited him into the apartment and questioned him about the program, defendant responded that she could "donate a few dollars, five dollars or so." At that time, Ms. Totoni became upset and told the defendant he did not have to tell her the amount to give. She asked the defendant to leave and come back later.

Defendant became upset and after insisting upon the money, he refused to leave the apartment and pushed Ms. Totoni. Ms. Totoni then swung at the defendant and he responded by hitting her with his fists which caused her to fall into the foot ottoman in the living room. Ms. Totoni then, fighting and swinging, picked up a ceramic cup and hit the defendant on the shoulder, at which time the defendant took the cup from Ms. Totoni and began to hit her across the head. When Ms. Totoni scratched defendant, he bit her. She then ran and defendant followed. She ran to the bathroom and attempted to close the door. However, when defendant pushed open the door, Ms. Totoni picked up an iron and swung it at the defendant, at which time he grabbed the iron from her and repeatedly hit her with it about the head and face until she fell on the floor, "layed [sic] out but she wasn't totally unconscious." Although there was blood all over, defendant stated he then stabbed the victim in the neck with a knife.

Next, defendant searched the apartment for money, and after finding $700, he left the apartment, also taking a bottle of Jack Daniels alcohol. He placed his bloodstained shirt in the incinerator and put on a sweatshirt which he was carrying in a bag. Defendant then went home, took a bath, burned his pants in the incinerator and took the

alcohol to the beach where he drank it with a group of friends. The next day, he purchased a car with the money.

It was agreed that defendant was born on January 17, 1967. It was also stipulated that defendant told a California employee that he arrived in California in October 1985, lived there until he was arrested on May 28, 1986, whereupon he remained in custody until June 9, 1987.

The medical examination and findings were stipulated. The examination was performed on June 23, 1983, and the victim's date of death was established as June 22, 1983. The cause of death was stab wounds to the neck, and cutting wounds and blunt trauma to the head and face, causing a skull fracture and hemorrhaging.

The trial court found defendant guilty of murder, home invasion, and armed robbery and although he was charged with rape, the trial court found him guilty of attempted rape. During the hearing in aggravation, several witnesses testified about defendant's juvenile record, his criminal history and convictions in California. In mitigation, witnesses testified about defendant's good behavior in the jail facility and about his family problems, which stemmed from a feeling of rejection by his father, the fact that he had been adopted, and his parents' divorce.

The trial court ruled that defendant's conduct was brutal, heinous and indicative of wanton cruelty making him eligible for a sentence of natural life without parole, as well as a consecutive term sentence.

OPINION

I

Defendant filed a pretrial motion to suppress the statements made to the Chicago police. As stated, the first statement was made on December 3, 1986, while defendant was in custody in Los Angeles for the charges of vehicular manslaughter, burglary, and grand theft auto, and the second and third statements were given to the police on June 9 and June 10, 1987, while he was in custody in Chicago, after being extradited from California to Illinois. The trial court stated that the first statement given in California was made in violation of defendant's right to counsel; however, it found there was sufficient attenuation so that defendant's later statements were not made in violation of his constitutional rights.

Because he was represented by appointed counsel in the California proceedings, defendant maintains that once he invoked his right to counsel to represent him in those proceedings, such invocation contin-

ued to apply to the later interrogation about the crimes in Chicago. Defendant argues that he invoked both his fifth amendment right to counsel, which applies to custodial interrogations, and his sixth amendment right to counsel, which attaches once formal criminal proceedings are initiated. See *People v. Bryant* (1990), 202 Ill. App. 3d 290, 297-98, 559 N.E.2d 930.

In *People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334, the defendant was arrested and taken into custody on a rape charge. A public defender was appointed to represent the defendant on the rape charge. However, while he was in custody, defendant was removed to another area in the jail and questioned about an unrelated murder charge. First, defendant stated he did not know anything about the murder; however, he later admitted that he had participated in the murder. Following this oral statement, the assistant State's Attorney read defendant his *Miranda* rights, questioned him further and obtained a written statement from him.

In addressing the defendant's fifth amendment claim, the *Martin* court reviewed whether defendant was properly advised of his fifth amendment right to counsel, and, if so, whether he knowingly and voluntarily waived this right. Declining to apply *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, to the facts therein, the *Martin* court held that since defendant did not invoke his right to counsel either in response to the *Miranda* warnings or at any time during the questioning on the murder charge, the *Edwards* rule did not apply. Accord *Butler v. McKellar* (1990), 494 U.S. 407, 108 L. Ed. 2d 347, 110 S. Ct. 1212; *People v. Hicks* (1989), 132 Ill. 2d 488, 548 N.E.2d 1042; *Bryant*, 202 Ill. App. 3d 290.

■ Like the defendants in the foregoing cases, defendant here, while still in custody on the charges in California, was given his *Miranda* rights when the Chicago police questioned him about Ms. Totoni's murder. Defendant not only waived his rights and thereafter implicated himself, he also called the Chicago police to inquire about the time of the extradition proceedings. After being brought back to Chicago, defendant again waived his *Miranda* rights on two additional occasions and gave a complete inculpatory statement to the police and the assistant State's Attorney. The record reflects defendant understood the meaning of the *Miranda* rights and that he was aware of the nature of the interrogation. Based upon the totality of the circumstances, we conclude defendant knowingly, voluntarily, and intelligently waived his fifth amendment right to counsel when he was questioned about the Totoni murder in Chicago.

Even if we were to agree with the trial court's finding here, in which the court suppressed the December statement given while defendant was in custody in California, which we find unnecessary to do, we would, however, agree that the June 9 and June 10 statements made by the defendant while he was in Chicago were sufficiently attenuated from the earlier statement to purge any taint. See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

■ However, unlike the fifth amendment right to counsel, our courts have found that the sixth amendment right is limited to charges on which judicial proceedings have been initiated. Thus, as in the *Bryant* case, defendant's argument here, that his previously invoked right to counsel extended to the interrogation about the Chicago murder, has little merit. The sixth amendment right to counsel has not been extended to provide counsel for a defendant during questioning on unrelated charges. *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877.

Moreover, the specific question as to whether an accused's request for counsel at an initial appearance on a charged offense constitutes an invocation of his fifth amendment right to counsel which precludes police interrogation on unrelated, uncharged offenses, and thus potentially taints the statements obtained as a result thereof, has been answered in the negative by a recent decision rendered by the United States Supreme Court. (See *McNeil v. Wisconsin* (1991), 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204.) In *McNeil*, the Court reiterated that once the accused's sixth amendment right to have the presence of counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interrogation is ineffective. (*McNeil*, 501 U.S. at 175, 115 L. Ed. 2d at 166, 111 S. Ct. at 2207.) However, the court held the sixth amendment right to be offense-specific and stated that "[i]t cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, ' "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." ' " *McNeil*, 501 U.S. at 175, 115 L. Ed. 2d at 166-67, 111 S. Ct. at 2207, quoting *United States v. Gouveia* (1984), 467 U.S. 180, 188, 81 L. Ed. 2d 146, 154, 104 S. Ct. 2292, 2297, quoting *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.

Accordingly, based upon the foregoing analysis and authority, we conclude that defendant's invocation of his right to counsel with respect to the charges pending in California did not bar admission of his statements regarding crimes committed in Chicago with which he had

not been charged at the time he made the statements. Defendant gave the statements about the Totoni murder before his sixth amendment right to counsel had attached to the unrelated, uncharged offenses.

## II

Defendant also filed a motion to dismiss all counts in the indictment except the murder count. In June 1987, defendant was indicted by a grand jury for armed violence, home invasion, armed robbery and the rape and murder of Elisa Totoni, all of which occurred on or about June 22, 1983. Defendant filed a motion to dismiss all counts of the indictment, except the murder count, for failure to comply with the period of limitation.

The trial court quashed all of the counts, except murder, under the 1987 indictment. However, it allowed the State to proceed on the second indictment that was returned by the grand jury on October 20, 1989, which realleged all prior counts except armed violence, and which stated the reasons why the State believed the period of limitation was tolled pursuant to the exceptions found in section 3—7 of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1989, ch. 38, par. 3—7).

Defendant contends that except for specified offenses, *i.e.*, murder, reckless homicide, treason, arson, or forgery, the law provides that prosecution for any offense, if it is a felony, must be commenced within three years after the commission of the crime. (Ill. Rev. Stat. 1989, ch. 38, par. 3—5(b).) Here, the incident occurred on June 22, 1983, and the original indictment was filed on June 16, 1987, more than three years after the incident. Thus, defendant asserts because the original indictment did not on its face list any exception to the period of limitation so as to toll the statute, the indictment was improper.

■ Section 3—5 governs the general time limitation on certain prosecutions. (Ill. Rev. Stat. 1989, ch. 38, par. 3—5.) Section 3—7 contains three exclusions from the period of the time limitation and allows for tolling of the limitation where: (1) a defendant has concealed himself within the State or has been absent from the State for the period during which the limitation is tolled; (2) a public officer has committed larceny of public funds while in office; and (3) proceedings are pending against the defendant for the same conduct, even if the indictment or information which commences the prosecution is quashed or the proceedings thereon are set aside. Ill. Rev. Stat. 1989, ch. 38, par. 3—7.

■ Although the original indictment here was defective on its face because it alleged a date beyond the applicable three-year period of limitation and because it failed to allege facts which would toll the running of the period of limitation under an exception to the statute (*People v. Strait* (1978), 72 Ill. 2d 503, 381 N.E.2d 692), the trial court allowed the State to proceed on the subsequent indictment which alleged sufficient facts of information which would extend the period of limitation beyond three years.

It is well established that the period within which prosecution must be commenced does not include any period in which the defendant is not usually or publicly resident within the State. (*Strait*, 72 Ill. 2d 503, 381 N.E.2d 692.) Similarly, it is well settled that even where a conviction is reversed because of the insufficiency of the allegations in the indictment, the second indictment will not be barred by the period of limitation if it properly contains sufficient information therein. The rationale for this rule is based upon the statutory exclusion which mandates that the reversal of the proceedings (*People v. Hobbs* (1935), 361 Ill. 469, 198 N.E. 224) or the pendency of the prior proceedings (*People v. Isaacs* (1967), 37 Ill. 2d 205, 226 N.E.2d 38) tolls the running of the statute. In other words, in a prosecution under a second indictment, it is not necessary that the prior indictment charging the same offense, which may have been quashed or set aside, be valid to toll the running of the period of limitation. However, it is necessary that facts " 'be averred which invoke one of the exceptions contained in the statute.' " (Emphasis omitted.) See *People v. Thingvold* (1991), 145 Ill. 2d 441, 449, 584 N.E.2d 89, quoting *Strait*, 72 Ill. 2d at 504-05.

Here, the record indicates that the crimes occurred on or about June 22, 1983. Thus, the period of limitation in which to prosecute all of the offenses except the murder charge expired on or about June 21, 1986, unless one of the exceptions was applicable to toll the limitation period. The evidence demonstrates the period of limitation was tolled for one year and nine months while defendant was knowingly absent from the State (Ill. Rev. Stat. 1989, ch. 38, par. 3—7(a)) and began to run again when he reentered Illinois on June 9, 1987. When the grand jury returned an indictment, albeit defective, on June 16, 1987, such filing again commenced to toll the period of limitation pursuant to section 3—7(b). (Ill. Rev. Stat. 1989, ch. 38, par. 3—7(b).) In determining whether the initial indictment tolls the period of limitation with respect to the later indictment, courts are required to look at the purpose of the limitations statute, which is to provide notice to the defendant of the charges against him. (See *United States v. Lytle*

(N.D. Ill. 1988), 677 F. Supp. 1370; *People v. Yarbrough* (1989), 179 Ill. App. 3d 198, 534 N.E.2d 695.) The record also reflects that the second indictment cited the tolling provisions of the Code.

Accordingly, since section 3—7 of the Code states, "The period within which a prosecution must be commenced does not include any period in which: *** (c) A prosecution is pending against the defendant for the same conduct, even if the indictment or information *** is quashed or the proceedings thereon are set aside, or are reversed on appeal" (Ill. Rev. Stat. 1989, ch. 38, par. 3—7(b)(3)), we conclude the trial court's denial of defendant's motion to quash the second indictment was proper.

### III

Next, defendant challenges the sufficiency of the evidence to support his convictions for armed robbery and attempted rape. First, defendant argues that he was not proven guilty of armed robbery beyond a reasonable doubt because the evidence shows that he did not use any force or threat of force to effect armed robbery. Instead, he urges that the violence he asserted upon Ms. Totoni was in response to his anger against her for ordering him out of the apartment and that the taking of the property was after the fact and incidental to the use of force.

■ We believe defendant was properly found guilty beyond a reasonable doubt of armed robbery. The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (See *People v. Holmes* (1990), 141 Ill. 2d 204, 565 N.E.2d 950.) A careful review of the record below in the light most favorable to the prosecution convinces us that a rational trier of fact could have found defendant guilty of armed robbery beyond a reasonable doubt. (See *People v. Herrett* (1990), 137 Ill. 2d 195, 206-07, 561 N.E.2d 1.) Here, the defendant approached Ms. Totoni and sought money for a walk-a-thon in which he was not a participant. Several witnesses testified that he also came to their apartments on different occasions to solicit funds for an alleged walk-a-thon. Defendant's own statement revealed that Ms. Totoni was hesitant to give him any money, not even the suggested $5 or so. Yet, it was only after she refused to give the defendant money that he became angry, refused to leave the apartment and pushed the victim.

Although the statement established that defendant took the money from a place hidden in the apartment after he repeatedly hit and stabbed Ms. Totoni, and possibly after she already may have been

dead, the statement also indicates that the victim did not intend or want to part with her money. We find that the necessary concurrence between the defendant's use or threat of force and his taking of the money and alcohol gives rise to the offense of armed robbery under the statute. See *People v. Williams* (1987), 118 Ill. 2d 407, 415-16, 515 N.E.2d 1230; 2 W. LaFave, Substantive Criminal Law §8.11(e), at 452-54 (1986).

Our supreme court recently held that, in order to constitute an armed robbery, the property need not be taken directly from the person or within her presence. (*People v. Blake* (1991), 144 Ill. 2d 314, 319, 579 N.E.2d 861.) The record here supports the conclusion that even if the defendant took the money after the victim was dead or became angry and only decided to attack her after she asked him to leave, it makes no difference whether the purpose of using force against Ms. Totoni was as a means to kill, since such force recognizably was used as a means to take property. *People v. Clemons* (1989), 179 Ill. App. 3d 667, 672-73, 534 N.E.2d 676.

The evidence establishes that defendant had possession of the proceeds of a robbery, he fatally stabbed the victim before leaving her apartment with her money, the initial attack was provoked because of money, and force and violence were used against the victim. Accordingly, we conclude because the evidence is not so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt, his conviction on the armed robbery charge is sustained.

■ Similarly, we believe the record establishes that there was sufficient evidence for the trier of fact to find defendant guilty of attempted rape. It is for the trier of fact to determine the weight and sufficiency of the evidence, and the reviewing court should not substitute its judgment for the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398.

Defendant here was charged with rape but convicted of attempted rape. Based upon his inculpatory statement, "I went at her to have sex with her," coupled with the physical evidence of injury to the victim's vaginal area which was obtained from the autopsy, we believe the evidence sufficiently establishes defendant had the intent to commit rape and that he did an act which constitutes a substantial step toward the commission of a rape. See *People v. Costello* (1992), 224 Ill. App. 3d 500, 586 N.E.2d 742.

Accordingly, we conclude that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found defendant guilty beyond a reasonable doubt as to the charge of attempted rape.

### IV

Last, defendant asks this court to vacate his sentences because they are excessive and because the trial court improperly determined that the murder constituted exceptionally brutal and heinous behavior indicative of wanton cruelty. The standard of review of a sentence claimed to be excessive is whether in fact the trial court exercised its discretion and, if so, whether that discretion was abused. (*People v. Kincy* (1982), 106 Ill. App. 3d 250, 435 N.E.2d 831.) We find no abuse of discretion by the trial court in sentencing defendant to natural life imprisonment without parole on the murder conviction.

■ In pertinent part, section 5—8—1(a)(1) of the Unified Code of Corrections (the Code) provides that "for first degree murder, *** if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty *** the court may sentence the defendant to a term of natural life imprisonment." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) In the present case, we believe the evidence was sufficient to establish that defendant's killing of an elderly woman was exceptionally brutal or heinous, so as to permit sentencing him to a term of natural life imprisonment following his murder conviction (see *People v. Nelson* (1990), 206 Ill. App. 3d 956, 565 N.E.2d 123), despite defendant's youth or his past history of drug use. The trial court also took into consideration the circumstances of the offense and defendant's history of prior criminal violations and convictions. See *People v. Adams* (1990), 195 Ill. App. 3d 870, 553 N.E.2d 3.

The evidence indicated that Ms. Totoni was unarmed and defenseless and did not provoke defendant's behavior. The record reflects that Ms. Totoni was an elderly woman who was unable to ward off the advances and attacks upon her person by a 16-year-old healthy male. After defendant hit and repeatedly beat the victim about her head and face with his fists and other household items, including a frying pan and an iron, he attempted to rape her. Further, while Ms. Totoni lay unconscious and covered with blood, defendant took a kitchen knife and stabbed her in the neck.

Accordingly, we find the defendant's sentence to natural life was not excessive since the murder by beating and stabbing of an elderly woman after an attempted rape was heinous behavior indicative of wanton cruelty.

■ Section 5—8—4 of the Code, governing the imposition of consecutive sentences, requires, on review of the record, a determination as to whether the sentencing judge was convinced in light of all the facts and circumstances before him that the consecutive term was necessary for the protection of the public. (*People v. Peebles* (1984), 125 Ill. App. 3d 213, 465 N.E.2d 539.) The court may impose a consecutive term sentence if it is of the opinion that such a term is required to protect the public from offenses which were committed as part of a single course of conduct only where "one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a).

However, section 5—8—4(b) states "[t]he court shall not impose a consecutive sentence except as provided for in subsection (a) unless" it takes into consideration "the nature and circumstances of the offense and the history and character of the defendant." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b).) As stated, we have reviewed the record below. We find that the consecutive term sentences imposed on defendant for armed robbery, home invasion, and attempted rape were not an abuse of the trial court's discretion in light of defendant's prior history, the calculated and premeditated manner in which he sought out the victim and the manner in which he attacked her. Even were we to agree with defendant's contention that his criminal objective remained unchanged throughout the home invasion, by taking her property, by repeatedly beating and stabbing the victim, and by attempting to rape Ms. Totoni, the defendant also inflicted severe bodily harm upon her. Thus, the consecutive sentences were properly imposed here. See *People v. Knight* (1985), 139 Ill. App. 3d 188, 486 N.E.2d 1356.

In addition, the record adequately indicates the need to protect the public from further criminal conduct by the defendant. Based upon his background, his propensity for violent behavior, and the circumstances under which defendant attacked his victim, the trial court could have rationally concluded the circumstances were likely to recur. (See *People v. Berry* (1988), 175 Ill. App. 3d 420, 529 N.E.2d 1001.) As stated previously, the evidence indicated defendant without provocation attacked an elderly victim in her home.

Accordingly, because the incident here involved repeated beatings and injuries to the victim and a subsequent stabbing even after it appeared to the defendant she was already unconscious, we conclude the trial court was well within its discretion to impose the consecutive

term sentences upon the defendant to protect the public from further criminal conduct by him.

Moreover, the aggregate of the consecutive sentences imposed, which was 75 years, did not exceed the sum of the maximum terms authorized under the statute (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2), which provides that the aggregate of consecutive sentences shall not exceed the sum of the maximum terms for two most serious felonies involved. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(c); see also *People v. Woods* (1985), 131 Ill. App. 3d 51, 475 N.E.2d 589; *People v. Gholston* (1984), 124 Ill. App. 3d 873, 464 N.E.2d 1179.) The sentences are affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.