*In re* MARRIAGE OF JANIS L. CUMMINGS, Petitioner and Contemnor-Appellant, and JOHN R. CUMMINGS, Respondent-Appellee.

Second District    No. 2—91—0369

Opinion filed December 19, 1991.

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellant.

Carl W. Telford, of Law Offices of Carl William Telford, Ltd., of La Salle, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Petitioner, Janis L. Cummings, appeals her conviction of indirect criminal contempt entered against her by the trial court. Petitioner raises two issues on appeal: whether the conviction of indirect criminal contempt must be reversed because she was denied due process, and whether the conviction must be reversed because the evidence did not show beyond a reasonable doubt that petitioner willfully violated the orders of the trial court.

Petitioner's marriage to respondent, John R. Cummings, was dissolved on December 15, 1989. Petitioner was awarded custody of the parties' three young children. Subsequently, petitioner married Philip Hartle. On April 26, 1990, respondent filed a petition for modification of custody, alleging that Hartle was "a self-proclaimed and self-admitted transvestite and alcoholic" and that the children were in imminent danger because in the past Hartle had "engaged in games, acts and conduct of sexual abuse perversion, and fondling of other minor children." According to respondent, Hartle engaged in inappropriate games with other children, and a game with the parties' children "referred to by *** Hartle as 'Mr. Baster' wherein he has, on repeated occasion [sic], tied up and bound at least two of the minor children

\*\*\* and stroked, rubbed, touched or otherwise assaulted said children with a knife."

In support of his allegations, respondent submitted the report of a licensed clinical psychologist who reviewed a videotape made by Hartle of himself and writings and fantasies written by Hartle. The report related to acts by Hartle regarding his son from a former marriage. The hearing on the petition was continued several times and eventually set for March 28, 1990.

On May 3, 1990, the trial court entered an order prohibiting all contact between Hartle and the children. Again, on June 26 the court ordered that all contact whatsoever between Hartle and the children was prohibited.

On August 17, 1990, respondent filed a petition for a rule to show cause against petitioner because she allegedly allowed Hartle to communicate by telephone with the children and to approach the residence and wave at the children. In an agreed order, dated September 17, the court ordered that "Hartle shall not be in, on, upon or remain at any residence wherein the minor children are present."

In her answer to respondent's request for admissions, petitioner stated that she and Hartle separated on April 26, 1990. Petitioner had not personally witnessed Hartle engaging in cross-dressing, but had seen him doing so in a videotape shown to petitioner by respondent on April 26, 1990.

On February 1, 1991, respondent filed the petition for a rule to show cause, which is the subject of this appeal. Respondent alleged that petitioner violated the orders of May 3, June 26, and September 13, 1990, by allowing Hartle to appear at petitioner's residence on January 5, 1991. Respondent alleged that this conduct was willful and contumacious. Respondent requested the court to enter a rule to show cause against petitioner and for a further order finding her in contempt "and remanding [petitioner] to the common jail of McHenry County till [sic] she shall purge herself of her said contempt." The court issued a rule to show cause against petitioner on February 11. Two days later, the court allowed petitioner's attorneys to withdraw from representing her. The court then entered the following order:

> "Cause coming on for hearing on Rule To Show Cause issued against Pet[itioner] Janis L[.] Cummings; Pet[itioner] appearing Pro Se [sic]; Resp[ondent] appearing personally and by Atty [sic] Telford; Pet[itioner] Janis Cummings admonished as to nature of proceedings, possible civil and criminal penalties and her right to counsel; the Court advised as to Petitioner['s] request for counsel;

It is Ordered

1) This cause is set for hearing on all pending matters on 3-6-91 ***

2) Pet[itioner] Janis Cummings is ordered to appear on said date 3-6-91 and Rule To Show Cause is continued for Pet[itioner] to obtain counsel."

In her answer to the petition, petitioner admitted that she met with Hartle on January 5, but she denied that he entered the residence or associated with the children.

At the outset of the hearing, the trial court instructed respondent's counsel to call his first witness; the court then corrected itself and noted that since a rule to show cause had been issued, the burden had shifted. Petitioner then called her first witness, Mandi Pappa. Pappa, the 13-year-old baby-sitter, testified that Hartle drove her to petitioner's house, but Hartle did not enter the house. Pappa could not recall by which door she entered the house.

Petitioner testified that on the day in question Hartle called her because he wanted to meet with her to discuss their impending annulment. Sometime after 8 p.m., Pappa was at the front door. She handed petitioner a basket of fruit. Petitioner had already put the two younger children to bed, and she told Pappa that the other child was upstairs in his bedroom. Pappa informed petitioner that Hartle wanted petitioner to bring something out to him. Petitioner took her two dogs out to the end of the driveway. Petitioner walked past Hartle's car, which was parked in the driveway with the engine running and the lights on. On her way back to the house, petitioner stopped to ask Hartle what he needed from the house. Petitioner then brought the dogs in, changed her clothes, gave Pappa a few instructions, and then left. Hartle had waited in the car the whole time.

Petitioner explained that she thought the September 13 order was very ambiguous. Her former attorney told her that the order meant that Hartle was not to be in the house when the children were there. It was not petitioner's understanding that the order meant that Hartle was not supposed to be around or near the residence.

Melissa Gadosh, respondent's fiancee, and her mother, Sharon, testified for respondent. Melissa and Sharon "staked out" petitioner's home because respondent was out of town. Melissa and Sharon parked behind the house and brought binoculars. They did not have a clear view of the front of the house, but they could see the driveway. Hartle pulled into the driveway in his car, and a girl got out. Hartle then exited the car and followed. Hartle left the car running and its lights on. Hartle entered the garage. Melissa then moved the car

around to the front of the house, where they were able to see into the garage. After about 45 minutes, Hartle and petitioner walked out of the garage and got in the car. Neither Melissa nor Sharon saw anyone walking dogs that night, nor did they see anyone actually enter or exit the house. Although Melissa testified that they had the same view, she testified that she could see the door inside the garage, whereas Sharon testified that she could not see that door. Although they had binoculars and could have looked in the windows of the house, they never looked through the windows. Melissa admitted that she had a civil suit pending against petitioner.

After respondent rested his case, the court asked petitioner if she had any rebuttal evidence. Since petitioner did not, her attorney started his closing argument by saying, "Judge, since the burden is on me, I guess, I would say that [respondent] failed to prove *** that [petitioner] is in willful contempt of this court." In stating its findings, the court found that Hartle entered the garage, and, therefore, it did not need to determine whether he actually entered the house because merely being in the garage constituted an entry upon the residence. The court concluded that petitioner's acquiescence to Hartle's presence was a willful violation of the court's orders. Before imposing a sanction, the court asked petitioner's attorney's opinion. Counsel stated that since it was indirect civil contempt, petitioner should be given an opportunity to purge herself. The court responded:

"I believe she knew that Mr. Hartle was not to be on or at her residence in any way, shape or form. She chose to take a chance. And in my opinion she now must pay for that. I find her actions in direct—strike that—in direct [sic] criminal contempt. That is nonpurgeable."

The court then sentenced petitioner to seven days in the county jail.

Petitioner filed a motion to reconsider alleging the grounds that she raises on appeal. Petitioner also filed a motion for a stay pending appeal. The court denied the motion to reconsider, but allowed the stay. Petitioner's timely appeal followed.

Petitioner first contends that her conviction of indirect criminal contempt must be reversed because the proceedings did not comport with the requirements of due process. Petitioner was convicted of indirect criminal contempt, which is intended to vindicate the dignity and authority of the court. (*People v. Ernest* (1990), 141 Ill. 2d 412, 421.) "A court has the inherent power to punish, as contempt, conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or

948

dignity, or to bring the administration of the law into disrepute."
*Ernest*, 141 Ill. 2d at 421.

■■ "Criminal sanctions are *retrospective* in nature; they seek to
punish a contemnor for past acts which he cannot now undo. Civil
sanctions are *prospective* in nature; they seek to coerce compliance at
some point in the future. That point might be immediate compliance
in open court or whenever the contemnor chooses to use his 'key'—
namely, compliance—to open the jailhouse door." (Emphasis in origi-
nal.) (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 46.) The trial
court here noted that there was no way for petitioner to purge herself
of contempt because she already violated the order of the court.

■■ Despite respondent's implications to the contrary, the process
due to individuals in civil contempt proceedings is different from that
which must be afforded an individual charged with criminal contempt.
(*Betts*, 200 Ill. App. 3d at 52, 58.) In a civil contempt proceeding, the
contemnor is only entitled to minimal due process, consisting of notice
and an opportunity to be heard. (*Betts*, 200 Ill. App. 3d at 53.) Con-
versely, in a criminal contempt proceeding, the contemnor is entitled
to the privilege against self-incrimination, the presumption of inno-
cence, and the right to be proved guilty beyond a reasonable doubt. *In
re Marriage of Ruchala* (1991), 208 Ill. App. 3d 971, 978.

■■ We disagree with respondent's assertion that the procedure
employed in the present case consisted merely of shifting the burden
of going forward. Not only has respondent failed to cite any authority
for the proposition that the court may arrange the presentation of the
evidence to require the alleged contemnor to go forward with the bur-
den of production, but also, as the record demonstrates, the trial
court here believed that the burden of proof had shifted as well. Logic
dictates that if an alleged contemnor is not required to present any
evidence whatsoever (because she is not required to incriminate her-
self and the burden is on the other party to prove her guilt beyond a
reasonable doubt) (see *Ruchala*, 208 Ill. App. 3d at 978), then the
court cannot order her to go forward with evidence. Moreover, peti-
tioner was required to "show cause" why she should not be held in
contempt. That amounts to an impermissible shifting of the burden of
proof. (*Ruchala*, 208 Ill. App. 3d at 978.) Consequently, the contempt
adjudication must be reversed.

Petitioner further argues that the form of the notice to her was
insufficient to alert her that she could be held in criminal contempt.
Respondent asserts that it was not respondent's fault that petitioner's
attorney, who began representing her after the citation had issued,
was confused about the form of the contempt proceeding. According

to respondent, it is not necessary that the petition for a rule to show cause, or the rule itself, state which type of contempt is at issue and that the Appellate Court, Fourth District, in *Betts* stated only that it is preferred that the notice specify what type of contempt is contemplated. *Betts*, 200 Ill. App. 3d at 58-59.

■ Depending on the circumstances, an act may support a finding of both criminal and civil contempt. (*People v. Gholson* (1952), 412 Ill. 294, 298-99.) The Appellate Court, Fourth District, reconsidered the procedural requirements for notice in a contempt proceeding in *In re Marriage of Alltop* (1990), 203 Ill. App. 3d 606. The court held that to avoid surprise and confusion, "due process requires that before criminal sanctions may be imposed upon a [contemnor] as a result of indirect criminal contempt proceedings, notice must be provided to the alleged contemnor that such sanctions are being sought and might be imposed." (*Alltop*, 203 Ill. App. 3d at 616.) The reason for such notice is that if not informed of the nature of the proceeding, the alleged contemnor will be precluded from asserting her due process rights, including the right not to incriminate herself. *In re J.L.D.* (1989), 178 Ill. App. 3d 1025, 1031.

■ In the present cause, not only was the pleading entitled "Petition For Rule to Show Cause," but it also prayed that petitioner be found in contempt and allowed to purge herself of that contempt. Although, according to the written order, petitioner was informed that she was subject to criminal penalties, at that particular hearing petitioner appeared *pro se*. From the record, it appears that respondent's counsel and petitioner's new counsel believed that the proceeding was for civil contempt and that the trial court never stated at the beginning of the hearing that it was adjudicating a criminal contempt charge. We conclude that neither the pleading nor the procedure adequately informed petitioner that she could be found in criminal contempt.

■ The adjudication of contempt is also defective on another ground. When a contemnor has been found guilty of indirect criminal contempt, the court must recite either at the hearing or in the written order that the contemnor was found guilty beyond a reasonable doubt. (*Betts*, 200 Ill. App. 3d at 61.) While such a requirement is not necessary in all cases, here, petitioner's attorney's confusion demonstrates that the nature of the contempt was not clear, and it is not apparent from the record that petitioner was found guilty beyond a reasonable doubt. (See *Ernest*, 141 Ill. 2d at 429; *Betts*, 200 Ill. App. 3d at 61.) By reason of the inadequate pleadings, procedures and find-

ings of the trial court as discussed above, the contempt order of the trial court against Janis L. Cummings is hereby vacated.

Because of our conclusion that the contempt conviction must be reversed, we need not address the remaining issue.

The judgment of the circuit court is reversed.

Reversed.

WOODWARD and GEIGER, JJ., concur.