GARY KAEDING, Plaintiff, v. LAVERN COLLINS *et al.*, Defendants (Gary Kaeding, Contemnor-Appellant).

Second District   No. 2—93—0959

Opinion filed May 24, 1996.—Rehearing denied July 12, 1996.

LYTTON, J., specially concurring.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, State's Attorneys Appellate Prosecutor's Office and Joan M. Kripke, of Chicago, of counsel), for the People.

John L. Olson, of Schlueter, Ecklund, Olson, Barrett & Mayfield, and Robert A. Calgaro, of Conde, Stoner & Killoren, both of Rockford, for other appellees.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

Plaintiff, Gary Kaeding, appeals from two orders of the circuit court of Winnebago County, which adjudged him to be in direct criminal contempt of court and sentenced him to consecutive sentences of 30 days' and 90 days' imprisonment. We affirm in part and reverse in part.

## FACTS

Plaintiff appeared *pro se* before Judge Harris Agnew concerning a civil matter. At a June 7, 1993, hearing, plaintiff handed Judge Agnew several documents, including one entitled "affirmation of prejudice and bias and demand for substitution of Judge Agnew based on cause" (pleading). The record indicates that Judge Agnew reviewed the documents and specifically stated the following as to the pleading:

"THE COURT: I would refer the record to paragraphs 22 first, 22(b). *** [T]he undersigned states the following: That upon information and belief Judge Agnew placed Deborah Kaeding in a home where he knew she would be sexually molested.

(d) That when Deborah Kaeding, the wife of Gary Kaeding, was a child, upon information and belief Judge Agnew, threatened her into signing a paper allowing her to be adopted by Ray and Chris Gough after Deborah Kaeding had told Judge Agnew of her fear of Ray Gough.

[(e)] That upon information and belief, Judge Harris Agnew knew that Judge Moore had heard a case, Ogle County case, State of Illinois versus Jimmy L. Higdon, case 87—CF—91, wherein Jimmy Higdon had been charged with raping Deborah Kaeding when he chose John L. Moore to hear the case against Gary Kaeding in Boone County.

(g) That upon information and belief, Judge Agnew was aware of the sexual molestation of Kirsten Kaeding, daughter of Gary Kaeding, by Federal Judge Phillip G. Reinhard, State's Attorney Paul Logli, and other officers of Winnebago County Court.

(h) That upon information and belief Judge Agnew is aware of a criminal conspiracy wherein officers of the Winnebago County Court are sexually molesting children.

(i) That Judge Agnew knew or had a duty to know that John L. Moore was an evil and corrupt Judge who had determined in the Higdon case that sworn testimony of the victim Deborah Kaeding, along with collaborating testimony, was not sufficient evidence to require the rapist to enter a defense. Number 23 paragraph. That Judge Agnew was aware and present when Gary Kaeding was attacked, assaulted and beaten by the court bailiffs in Judge Nielsen's courtroom because he had asked for a court reporter.

25. That the undersigned is in fear of his life, liberty, and property under any and all authority of Judge Harris Agnew.

26. That the undersigned is in fear that he would be imprisoned and/or killed for speaking the truth."

Thereafter, Judge Agnew made the following determination concerning the above-mentioned allegations:

"THE COURT: These allegations in this pleading are preposterous, totally untrue from the Court's knowledge. I'm not aware of any of these things. They're outrageous. These comments are *** made to embarrass or obstruct the Court in it's [sic] administration of justice, to degregate [sic] the authority of the Court in it's [sic] dignity, to bring the administration of justice into disrepute.

I consider this pleading direct contempt of court because the allegations are directed towards this Court, this Judge.

I'm going to order that a Rule to Show Cause be issued as to why Mr. Kaeding shouldn't be held in contempt of court.

I'm going to *** assign a Judge outside of this circuit to hear case 92—L—436; and the first matter to be heard will be the Rule to Show Cause on Mr. Kaeding for direct contempt ***."

Over plaintiff's objection, Judge Agnew appointed the public defender to represent plaintiff, and plaintiff's case appeared before Judge John Rapp in July 1993. At a July 14, 1993, hearing, Judge Rapp discharged the public defender and appointed attorney Craig Sahlstrom (Sahlstrom) at plaintiff's request.

At a July 15, 1993, hearing, plaintiff alleged that Sahlstrom failed to assist him in preparation for the hearing, and he presented to the bailiff, who handed to Judge Rapp, a "motion to vacate order and rule to show cause." Then came the following colloquy in regard to this document:

"THE COURT: Mr. Kaeding at paragraph Roman V, you have alleged in paragraph 1 that in the star-chambered [sic] proceeding held on July 14, 1993, Judge Rapp declared that Gary Kaeding is guilty without trial or hearing. Would you explain that statement.
* * *

MR. KAEDING: I believe the statement speaks for itself.

THE COURT: All right. Then you're sentenced to 30 days

Contempt of Court for your statement there accusing this Court of having a star-chambered [*sic*] proceeding.

MR. KAEDING: I object. That's a star-chambered [*sic*] proceeding.

THE COURT: That's fine. That's direct criminal contempt ordered.

Mr. Kaeding, on page 11 of the document you handed me under Roman XII, you have alleged *** the following:

That Judge Rapp is attempting to stop the undersigned from stopping such things as the murder of live human babies; of embezzlement of $23 million dollars from the Illinois Clerk of Court's Office; the embezzlement of $6.8 million dollars through the Federal Court in Rockford; the molestation of children, including but not limited to the daughter of the undersigned; and other criminal acts by public officers serving in Winnebago County.

For that you're given an additional 30 days in jail.

MR. KAEDING: I object.

THE COURT: Fine. The Court will refuse to vacate the order for Rule to Show Cause. You may proceed at this time."

Thereafter, Sahlstrom was discharged, with Judge Rapp finding plaintiff would "proceed without counsel as he has done everything he can to discourage anyone from representing him in the proceeding." Plaintiff was then afforded the opportunity to address the allegations contained in his pleading.

In rendering his finding, Judge Rapp struck the allegations contained in paragraphs 25 and 26, noting that they were merely a statement of expression of mind. As to paragraphs 22(a), (b), (d), (e), (g), (h), and (i), Judge Rapp stated:

"In his attempt to remove Judge Agnew *** Mr. Kaeding committed conduct calculated to embarrass, hinder, or obstruct the Court in its administration of justice and to derogate from its authority or dignity or bring the administration of law into disrepute."

Judge Rapp found plaintiff in direct criminal contempt, determined that he had not shown cause why he should not be held in direct criminal contempt, and continued the case for sentencing. In addition, Judge Rapp referred to plaintiff's motion to vacate and reiterated his holding that the allegations on pages 4 and 11 constitute direct criminal contempt for which he sentenced him to two 30-day consecutive sentences.

At the sentencing hearing, Judge Rapp modified plaintiff's sentence to a single sentence of 30 days, finding that the contemptuous materials contained in his motion to vacate were the result of a single act of filing the motion, so that only one sentence may be imposed. Judge Rapp took judicial notice of *People v. Kaeding*, 192

Ill. App. 3d 660 (1989), wherein plaintiff was involved in a previous act of contempt. Dennis Smith, a friend of plaintiff, testified and suggested to Judge Rapp that plaintiff be barred from filing any papers in court, except through a licensed attorney. Judge Rapp stated that he liked the suggestion, but that "this Court may not put someone on probation for direct contempt." Judge Rapp sentenced plaintiff to 90 days consecutive with his previous 30-day sentence. The mittimus stated that there shall be "no day for day."

Plaintiff appeals the two direct criminal contempt findings, contending that his due process rights were violated, that Judge Rapp erred in not considering probation as a sentencing option and not allowing him day-for-day good-behavior credit.

## ANALYSIS

■ Criminal contempt consists of conduct which is calculated to embarrass, hinder, or obstruct a court in the administration of justice or to diminish its authority or dignity, bringing the administration of law into disrepute. *People v. Simac*, 161 Ill. 2d 297, 305 (1994). Direct criminal contempt is contemptuous conduct which occurs in the presence of the judge, thereby making all the elements of the offense within the judge's personal knowledge. *Simac*, 161 Ill. 2d at 306.

The standard of review for a finding of direct criminal contempt is whether sufficient evidence exists to support such a finding, and whether the judge considered facts outside of the judge's personal knowledge. *Simac*, 161 Ill. 2d at 306.

## INTENT

■ Plaintiff first contends that he did not have the requisite mental state to support a direct criminal contempt finding because he believed his allegations to be true, and he did not intend to embarrass or obstruct the court. Criminal contempt requires that the offender have actual or constructive knowledge of what conduct is forbidden; intent or, at least, knowledge of the nature of the act is necessary. *In re Marriage of Lichtenstein*, 263 Ill. App. 3d 266, 271 (1994).

There need not be a specific manifestation of contemptuous intent; rather, such intent may be inferred from the nature of the contemptuous act and surrounding circumstances. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 49 (1990). The record indicates that plaintiff was involved in two published cases. In one, his behavior and in the other his attorney's behavior, similar to that of the filing of his pleading, was held to be contumacious conduct. *People v. Kaeding*, 239 Ill. App. 3d 851 (1993); *People v. Kaeding*, 192 Ill. App. 3d 660 (1989). Under these circumstances, it may be inferred that plaintiff had

knowledge of what conduct was forbidden and had the requisite knowledge that his filings in the instant case were contemptuous.

## DUE PROCESS

Plaintiff next contends that, during the proceedings before Judge Agnew and Judge Rapp, his due process rights were violated. Specifically, plaintiff maintains that, despite the direct criminal contempt finding, he should have been afforded due process rights applicable to indirect criminal contempt.

Our supreme court in *People ex rel. Kunce v. Hogan*, 67 Ill. 2d 55, 60 (1977), following *People v. Jashunsky*, 51 Ill. 2d 220, 223 (1972), recognized that direct criminal contempt may be committed out of the immediate physical presence of the judge and yet still occur within an integral part of the court. For example, the very act of filing a document with the clerk of the court that contains contemptuous matter, *i.e.*, tending to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity or bring the administration of law into disrepute, is sufficient to constitute direct contempt. *Jashunsky*, 51 Ill. 2d at 224; *Kunce*, 67 Ill. 2d at 60.

Matters such as the filing of contemptuous documents are deemed to have occurred within the constructive presence of the court and, therefore, fall within a subcategory of direct criminal contempt. *Betts*, 200 Ill. App. 3d at 48. The procedural rights afforded in indirect criminal contempt proceedings also apply to contempt charges falling within this subcategory. *Betts*, 200 Ill. App. 3d at 59. Those procedural rights include the right to know the nature of the charge; the right to have an opportunity to be heard; the right against self-incrimination; the right of the presumption of innocence; the right to be proved guilty beyond a reasonable doubt; the right to counsel; the right to a public trial; and the right to confront witnesses. *Betts*, 200 Ill. App. 3d at 58.

The court in *Betts*, 200 Ill. App. 3d at 50, citing *Mayberry v. Pennsylvania*, 400 U.S. 455, 464, 466, 27 L. Ed. 2d 532, 539, 540, 91 S. Ct. 499, 504, 505 (1971), noted further that when a contempt matter is not summarily decided, it may be assigned to another judge:

"[F]or determination solely upon the record of the proceedings in which the contemptuous conduct allegedly occurred. Where (1) an individual reviles a judge during a judicial proceeding, (2) it is likely the remarks 'left personal stings,' and (3) sanctions for contempt are not immediately imposed for the purpose of maintaining order in the courtroom, due process requires adjudication of the contempt charges by a judge other than the one who presided at the proceedings in which the contemptuous conduct allegedly occurred."

In the instant case, considering the personal attacks upon Judge Agnew in plaintiff's pleading, following *Mayberry*, it was appropriate for him to refer the case to Judge Rapp. However, instead of requesting Judge Rapp to stand in judgment of the direct criminal contempt proceeding, through a petition for adjudication of criminal contempt, Judge Agnew ordered a rule to show cause upon plaintiff. Plaintiff contends that ordering and conducting a rule to show cause hearing was error.

The court in *In re Marriage of Cummings*, 222 Ill. App. 3d 943 (1991), reversed an indirect criminal contempt adjudication where a contemnor was required to show cause. *Cummings* held that logic dictates that if a contemnor is not required to present any evidence, due to the right against self-incrimination and the fact that the burden is on the other party to prove guilt beyond a reasonable doubt (*In re Marriage of Ruchala*, 208 Ill. App. 3d 971, 978 (1991)), then he may not be required to show cause why he should not be held in contempt, as it amounts to an impermissible shifting of the burden of proof (*Ruchala*, 208 Ill. App. 3d at 978). *Cummings*, 222 Ill. App. 3d at 948.

If this court were to accept the position of both Judge Agnew and Judge Rapp that plaintiff's contemptuous conduct was the filing of contemptuous documents, *i.e.*, his pleading and motion to vacate, then, following *Betts*, plaintiff's conduct was within the constructive presence of the court and fell within a subcategory of direct criminal contempt, so as to afford him the procedural rights of indirect criminal contempt.

■ Our review of the record, however, leads us to conclude that plaintiff is not entitled to the procedural rights afforded to those charged with direct criminal contempt based upon constructive knowledge. In arriving at this finding, we note that, in the proceedings before both Judge Agnew and Judge Rapp, the record reflects that the court had actual, personal knowledge of the content of the contemptuous documents. This knowledge is evidenced in the record by Judge Agnew's and Judge Rapp's acknowledgment of being handed the respective documents, coupled with the fact that the specific contemptuous allegations were read into the record by Judge Agnew and Judge Rapp.

The record clearly shows that Judge Agnew and Judge Rapp had actual, personal knowledge of the allegations; that the circumstances surrounding plaintiff's contempt were apparent to each judge; and that proof of the contempt did not depend upon facts outside of the court's knowledge. We find that plaintiff's contemptuous conduct was his speech and actions in the direct presence of the court, and not the act of filing contemptuous documents.

As Judge Agnew and Judge Rapp each had actual, rather than constructive, knowledge of the plaintiff's contemptuous speech and actions, plaintiff's conduct does not fall within the subcategory of direct criminal contempt discussed in *Betts*, 200 Ill. App. 3d at 48 (the filing of contemptuous documents are deemed to have occurred within the constructive presence of the court and fall within a subcategory of direct criminal contempt). Therefore, plaintiff should not be afforded indirect criminal contempt procedural rights, and, as he was not entitled to these rights, none were violated.

## PROBATION

■ Plaintiff contends further that his case must be remanded for a new sentencing hearing because the circuit court erroneously held that probation was not an available disposition for direct criminal contempt.

The standard of review concerning the imposition of a sentence is whether the circuit court abused its discretion in imposing such a sentence. *People v. Saunders*, 235 Ill. App. 3d 661, 673 (1992). A sentence will not be disturbed unless it is manifestly disproportionate to the nature of the case. *People v. Christy*, 271 Ill. App. 3d 966, 967 (1995).

"[I]t is appropriate to impose a sentence of probation upon one found guilty of criminal contempt ***." *In re G.B.*, 88 Ill. 2d 36, 44 (1981). In light of *In re G.B.*, Judge Rapp erred in finding that "this Court may not put someone on probation for direct contempt."

Probation or conditional discharge is appropriate only in instances where the court has taken into consideration the circumstances of the offense; the history, character, and condition of the offender, particularly, whether he is likely to commit further crimes; if he and the public would be best served if he did not receive a criminal record; and if, in the best interest of justice, probation is more appropriate. 730 ILCS 5/5—6—1(a) (West 1992).

The reasons for imposing punishment for direct criminal contempt include retribution, deterrence, and vindication of the norms of socially acceptable conduct, and punishment for misdemeanor criminal conduct is limited to no more than six months in jail and a small fine. *Betts*, 200 Ill. App. 3d at 44.

Judge Rapp did not sentence plaintiff to the minimum term; rather, he sentenced him to three months' imprisonment, half the maximum term, which suggests that Judge Rapp believed imprisonment to be the appropriate punishment and that probation in any event was not a favorable alternative. Considering the instant situation is the third time in four years that plaintiff has been involved in

contempt proceedings, it cannot be said that Judge Rapp abused his discretion in imposing the sentence or that the sentence is manifestly disproportionate to the nature of the case.

## DAY-FOR-DAY

■ Pursuant to section 3 of the County Jail Good Behavior Allowance Act (the Act) (730 ILCS 130/3 (West 1992)), persons sentenced to county jail, except for one who: (1) inflicted physical harm upon another in committing the offense for which he is confined; (2) is serving a mandatory minimum sentence; (3) is sentenced for a felony to probation or conditional discharge where the condition is to serve a sentence of periodic imprisonment; or (4) is sentenced under an order of court for civil contempt, are entitled to good-behavior allowance. Plaintiff was sentenced for direct criminal contempt, and, as none of the exceptions enumerated in the Act apply, he must be accorded day-for-day good-behavior allowance on each of the sentences imposed by the circuit court.

## CONCLUSION

For the foregoing reasons, the circuit court is affirmed as to the direct criminal contempt findings, and as to the sentences imposed; the circuit court is reversed in not affording plaintiff day-for-day good-behavior allowance on each of his sentences, to which plaintiff was entitled.

Affirmed in part; reversed in part.

McCUSKEY, J., concurs.

JUSTICE LYTTON, specially concurring:

I do not agree with the majority's holding that the trial court possessed actual, personal knowledge simply because documents were handed to the judges and portions were read into the record. Presumably, in all contempt cases based upon the filing of improper pleadings, a judge will eventually obtain and read the documents in question. If this were sufficient to constitute actual, personal knowledge, courts would never need to provide the procedural rights discussed in *In re Marriage of Betts*, 200 Ill. App. 3d 26, 47-59, 558 N.E.2d 404, 418-26 (1990).

I concur in the outcome because I believe the record provides another basis to conclude that Kaeding's procedural rights were not violated. Where, as here, the contemnor appears before the court and admits to actions constituting contempt, the party may be held in direct contempt. *People v. Harrison*, 403 Ill. 320, 324, 86 N.E.2d 208,

210 (1949); *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 255, 94 N.E.2d 148, 149 (1950); see also *Cesena v. Du Page County*, 201 Ill. App. 3d 96, 113, 558 N.E.2d 1378, 1389 (1990) ("when the alleged contemnor admits such an indirect contempt in court, it may be punished as a direct contempt"), *rev'd on other grounds*, 145 Ill. 2d 32, 582 N.E.2d 177 (1991). Since a contemnor may be dealt with summarily without the formality of pleadings, notice and hearing when his actions constitute direct contempt (*People ex rel. Chicago Bar Ass'n v. Barasch*, 21 Ill. 2d 407, 410, 173 N.E.2d 417, 419 (1961)), Kaeding cannot complain that his procedural rights were violated.