**2025 IL 131564**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 131564)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
GEOFFREY P. SEYMORE, Appellee.

*Opinion filed December 4, 2025.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     The central issue in this appeal is whether the appellate court erred in holding that defendant Geoffrey P. Seymore was entitled to good-behavior credit under section 3 of the County Jail Good Behavior Allowance Act (Behavior Allowance Act) (730 ILCS 130/3 (West 2022), after the De Kalb County circuit court sanctioned the defendant with 30 days' imprisonment for violating the electronic

monitoring condition of his pretrial release. For the reasons that follow, we reverse the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        On September 7, 2024, the defendant was charged by information with aggravated unlawful participation in methamphetamine production (720 ILCS 646/15(b)(1)(H) (West 2022)), unlawful possession of methamphetamine (*id.* § 60(a)), and unlawful possession of methamphetamine with intent to deliver (*id.* § 55(a)(1)). On September 9, the State filed a petition to deny pretrial release. That day at his initial court appearance, the defendant was released, subject to various conditions including electronic monitoring. The following day, September 10, the defendant was outside his residence at locations in De Kalb, Broadview, and Chicago. On September 11, the De Kalb County Sheriff's Office filed an electronic monitoring violation report.

¶ 4        On September 12, 2024, the State filed a "Petition for Sanctions" for the defendant's violation of his electronic monitoring pretrial release condition. The State's petition was a preprinted form. Paragraph 5 of the form stated, "The State reserves the right to modify the request at the conclusion of the hearing; however, as of the time of this filing, the State intends to ask that the Court issue the following sanction." The form then listed the three sanctions in section 110-6(f) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6(f) (West 2022)). A box next to the second item was checked, indicating that the State requested "Imprisonment in the county jail for the following number of days: 30."

¶ 5        On September 13, 2024, the trial court conducted a hearing on the State's petition, then entered a written order, also a preprinted form. The order indicated that the court found that the State had proved the defendant's violation by clear and convincing evidence. Under the heading, "It is hereby ordered," the judge checked the box next to "Imprisonment in the De Kalb County Jail for a period of [handwritten 30] (not exceeding 30 days.)" Below that, the judge wrote, "NO GOOD TIME TO APPLY."

¶ 6        On September 16, 2024, the chief public defender of De Kalb County filed an appearance on behalf of the defendant. Three days later, on September 19, the

defendant's attorney filed a motion for relief under Rule 604(h)(2), asserting that the Behavior Allowance Act applied to his 30-day imprisonment sanction. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The trial court denied that motion, and the defendant filed a notice of appeal on another preprinted form. Under the heading, "Nature of Order Appealed (check only one)," the defendant left the boxes next to "Denying pretrial release," "Revoking pretrial release," and "Imposing conditions of pretrial release" blank. In handwriting, the public defender added a checked box and the word "Sanctions."

¶ 7    The appellate court reversed the trial court's decision and vacated its order "to the extent it determined that good-conduct credit did not apply to the 30-day sanction of imprisonment." 2025 IL App (2d) 240616, ¶ 24.

¶ 8    Initially, the appellate court addressed its own jurisdiction. The defendant contended that the appellate court had jurisdiction over his appeal for two reasons. First, the defendant asserted that the trial court's sanctions order was a final and appealable order, similar to an order in a criminal contempt proceeding. Second, the defendant asserted that the trial court's sanctions order was an interlocutory but appealable order under Illinois Supreme Court Rule 604(h)(1) (eff. Apr. 15, 2024). According to the defendant, the sanctions order was "an order imposing conditions of pretrial release" under Rule 604(h)(1)(i) (Ill. S. Ct. R. 604(h)(1)(i) (eff. Apr. 15, 2024)), as well as "an order revoking pretrial release" under Rule 604(h)(1)(ii) (Ill. S. Ct. R. 604(h)(1)(ii) (eff. Apr. 15, 2024)).

¶ 9    In response, the State contended that the trial court's sanctions order was not appealable on an interlocutory basis because it was not an order imposing conditions of pretrial release under Rule 604(h)(1)(i), an order revoking pretrial release under Rule 604(h)(1)(ii), or an order denying pretrial release under Rule 604(h)(1)(iii) (Ill. S. Ct. R. 604(h)(1)(iii) (eff. Apr. 15, 2024)). Because the rule specifies only those three types of interlocutory orders as immediately appealable, the State maintained that the appellate court lacked jurisdiction.

¶ 10    The appellate court disagreed with the State. According to the appellate court, the sanctions order requiring the defendant to serve 30 days in the county jail fell within all three of Rule 604(h)(1)'s enumerated bases for an interlocutory appeal by the defendant. The trial court's order granting the State's petition for sanctions and ordering a term of imprisonment was, "at a minimum, an order revoking pretrial

release, albeit temporarily, under Rule 604(h)(1)(ii)." 2025 IL App (2d) 240616, ¶ 12. Further, that order was an order imposing conditions of release under Rule 604(h)(1)(i)—"namely, serving the sanction became a condition of continued release." *Id.* Additionally, it was also "arguably" an order denying pretrial release under Rule 604(h)(1)(iii), "again, albeit, temporarily." *Id.* The appellate court noted that one of the alternative sanctions available to courts in response to a violation of pretrial release is a "modification of the defendant's pretrial conditions" (725 ILCS 5/110-6(f)(4) (West 2022)), which aligned squarely with the enumerated basis for appeal under Rule 604(h)(1)(i) as an order imposing conditions of pretrial release. 2025 IL App (2d) 240616, ¶ 12.

¶ 11 The appellate court distinguished *People v. Boose*, 2024 IL App (1st) 240031. There, the defendant appealed the trial court's order denying her request for sentencing credit under the Behavior Allowance Act and claimed that the order was one that denied her pretrial release under Rule 604(h)(1)(iii). *Id.* ¶¶ 3, 13. The appellate court reasoned that the defendant in *Boose* argued only one basis for her Rule 604(h) appeal (denial of pretrial release), while the defendant in this case argued that the sanctions order "is of a nature that falls within more than one of Rule 604(h)'s enumerated categories." 2025 IL App (2d) 240616, ¶ 15.

¶ 12 The appellate court then briefly addressed mootness. The court stated that, while the defendant's appeal was moot because he had already completed the sanction that he challenged (*id.* ¶ 17), two exceptions to the mootness doctrine applied—namely, the public interest exception and the "capable of repetition, yet evading review" exception (*id.* ¶ 18).

¶ 13 Before addressing the merits of the Behavior Allowance Act issue, the appellate court observed that the State did not mention that issue in its response brief, so it forfeited any argument that the defendant was not entitled to credit. *Id.* ¶ 19. Because forfeiture is only a limitation upon the parties, however, the court chose to consider the issue "to obtain a just result or maintain a sound body of precedent." *Id.*

¶ 14 The appellate court remarked that the Code of Criminal Procedure of 1963— and, particularly, section 110-6(f)—is "silent" on the issue of whether the Behavior Allowance Act applies to jail sanctions imposed for violations of pretrial release conditions. *Id.* ¶ 20. According to the appellate court, the act creates a presumption

that good-behavior credit applies, unless an exception applies. *Id.* The court surmised, "Given the absence of an exception to good-conduct credit for pretrial release sanctions in either section 110-6 of the Code or the Behavior Allowance Act, we do not think the legislature intended to create one." *Id.* ¶ 22.

¶ 15    Additionally, although the sanction here did not arise from a criminal contempt proceeding, a sanction for violating conditions of pretrial release is similar to criminal contempt, for which good-behavior credit applies. *Id.* ¶ 20 (citing *Kaeding v. Collins*, 281 Ill. App. 3d 919, 928 (1996), and *People v. Russell*, 237 Ill. App. 3d 310, 314-15 (1992)). Finally, the appellate court dismissed the trial court's reliance on the plain language of section 110-6(f)(2) (725 ILCS 5/110-6(f)(2) (West 2022)), which refers to a "sanction" of imprisonment, rather than a "sentence" of imprisonment as required to trigger the Behavior Allowance Act. 2025 IL App (2d) 240616, ¶ 21. To the appellate court, that seemed "a distinction without difference here." *Id.*

¶ 16    This court allowed the State's petition for leave to appeal. See Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 17                                ANALYSIS

¶ 18    In its opening brief, the State vigorously contests the appellate court's jurisdiction. According to the State, Rule 604(h)(1) authorizes a defendant to appeal three types of interlocutory pretrial release orders but not an interlocutory order imposing a sanction for violating a pretrial release condition. In its reply brief, the State continues to argue that Rule 604(h)(1) does not govern appeals of section 110-6(f) sanction orders but now insists that the appellate court did have jurisdiction because the trial court's sanction order was not interlocutory but, rather, was final and appealable. We agree with the State's new position. Issues of jurisdiction are questions of law that we review *de novo*. *People v. Dyas*, 2025 IL 130082, ¶ 15.

¶ 19    Article VI, section 6, of the Illinois Constitution of 1970 provides, "Appeals from final judgments of a Circuit Court are a matter of right to the Appellate Court in the Judicial District in which the Circuit Court is located ***." Ill. Const. 1970, art. VI, § 6. Section 6 further provides that this court "may provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts."

*Id.* In sum, the Constitution provides two paths to the appellate court: an appeal from a final order and an appeal from an interlocutory order when such an appeal is allowed by our rules.

¶ 20    Rule 604 is such a rule, and it provides:

"(h) Appeals From Orders Imposing Conditions of Pretrial Release, Granting or Denying a Petition to Deny Pretrial Release, or Revoking or Refusing to Revoke Pretrial Release.

(1) Orders Appealable. An appeal may be taken to the Appellate Court from an interlocutory order of court entered under sections 110-5, 110-6, and 110-6.1 of the Code of Criminal Procedure of 1963 as follows:

(i) by the State and by the defendant from an order imposing conditions of pretrial release;

(ii) by the defendant from an order revoking pretrial release or by the State from an order denying a petition to revoke pretrial release;

(iii) by the defendant from an order denying pretrial release; or

(iv) by the State from an order denying a petition to deny pretrial release." Ill. S. Ct. R. 604(h)(1) (eff. Apr. 15, 2024).

¶ 21    Under Rule 604(h)(1), the defendant may appeal three types of interlocutory pretrial release orders: orders imposing conditions of pretrial release, orders revoking pretrial release, and orders denying pretrial release. The order that the defendant appealed here was none of those.

¶ 22    First, the trial court's sanction order did not impose conditions of pretrial release. Section 110-10(a) lists mandatory and discretionary conditions of pretrial release, and a sanction of 30 days' imprisonment is not among those conditions. See 725 ILCS 5/110-10(a) (West 2022). Further, under section 110-10(b), conditions of pretrial release may not be punitive. See *id.* § 110-10(b). A sanction of 30 days' imprisonment is punitive; it punishes the defendant for violating the conditions of pretrial release.

¶ 23    Second, the trial court's sanction order did not revoke pretrial release. Section 110-6(a) addresses revocations and states that the trial court may revoke pretrial release for a felony or Class A misdemeanor defendant "only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release." *Id.* § 110-6(a). Here, the defendant was not charged with a felony or Class A misdemeanor while released. Instead, he violated the electronic monitoring condition of his release.

¶ 24    Third, the trial court's sanction order was not an order denying pretrial release. Article 110 of the Code of Criminal Procedure (725 ILCS 5/art. 110 (West 2022)) creates a presumption for pretrial release, and the State must prove by clear and convincing evidence that the defendant committed a detainable offense, that the defendant poses a real and present threat to any person or persons, or is a flight risk, and that "no conditions could mitigate this threat or flight risk" (*id.* § 110-6.1(a)). In seeking sanctions under section 110-6(f) (*id.* § 110-6(f)), the State must prove by clear and convincing evidence that the defendant violated a condition of pretrial release, that the defendant knew such conduct would violate a court order, that the defendant's conduct was willful, and that the violation was not caused by a lack of financial resources. *Id.* § 110-6(e). The State's sanctions petition made the latter showing under section 110-6(e), not the former showing under section 110-6.1(a). Because the trial court's sanction order was not an interlocutory order that was appealable under Rule 604(h)(1), the question becomes whether it was a final order appealable as of right.

¶ 25    This court has long held that an order is final when it terminates the entire controversy or a separate part of it. *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008); see *In re Curtis B.*, 203 Ill. 2d 53, 59 (2002) (stating that a judgment is final if it disposes of the rights of the parties, either on the entire controversy or on a separate part of it (citing *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998))). In a civil case, "a final order disposing of fewer than all of the claims" is not appealable, absent a Rule 304(a) finding (see Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)), where another claim remains pending. *Gutman*, 232 Ill. 2d at 151. In a criminal case, like the one before us, Rule 304(a) does not apply. See Ill. S. Ct. R. 612(b) (eff. July 1, 2017) (listing the civil appeals rules that apply to criminal appeals).

¶ 26 One hallmark of a final and, consequently, appealable order is whether, if affirmed, the trial court has only to proceed with the execution of the judgment. See *In re Estate of French*, 166 Ill. 2d 95, 101 (1995) ("In general, a final and appealable judgment is defined as one in which the trial court has determined the merits of the parties' claim, such that the only remaining action is to proceed with execution of the judgment." (citing *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989))). Stated differently, an order from which an appeal lies may be one "which finally determines all the issues presented by the pleadings" or one which constitutes a "final determination of a collateral matter, distinct from the general subject of the litigation, but which, as between the parties to the particular issue, settles the rights of the parties." *Brauer Machine & Supply Co. v. Parkhill Truck Co.*, 383 Ill. 2d 569, 574-75 (1943); see generally *In re A.H.*, 207 Ill. 2d 590, 594 (2003) (holding that a final order sets or fixes the rights of a party).

¶ 27 The trial court's sanctions order did not terminate the criminal case against the defendant on the merits. In fact, neither the court's sanctions order nor the court's order denying the defendant's motion for relief mentioned the underlying charges against the defendant. Those two orders, however, did dispose of a distinct, collateral matter—namely, the defendant's willful violation of the electronic monitoring condition and the appropriate sanction for that violation—that firmly settled his rights as to that matter. If that order had been affirmed and the case remanded to the trial court, the trial court would have had no other task than to execute its order.

¶ 28 The trial court's order imposed a sanction for the defendant's violation of one of the pretrial release order's conditions. In that sense, the order resembled a contempt order imposing a sanction for a party's violation of an earlier order. In *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172 (1981), we stated, "The imposition of a sanction for contempt is final and appealable because, although occurring within the context of another proceeding and thus having the appearance of being interlocutory, it is an original special proceeding, collateral to and independent of, the case in which the contempt arises." See *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 216 (1994) (holding that "the imposition of a sanction for contempt is final and appealable"); *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 415 (1970) ("an adjudication in a contempt proceeding is final and appealable because it is an original special proceeding, collateral to, and

independent of, the case in which the contempt arises where the imposition of the sanction does not directly affect the outcome of the principal action"). The sanctions order was not the result of a special proceeding, but that order was the result of proceedings on the State's petition for sanctions—proceedings that were collateral to and independent of the underlying criminal case against the defendant. As such, it was a final order. *Cf. People v. Albitar*, 374 Ill. App. 3d 718, 722-23 (2007) (holding that a bond forfeiture judgment was final and appealable). We conclude that the appellate court had jurisdiction over the defendant's appeal.[1]

¶ 29     Before we can reach the merits of the Behavior Allowance Act issue, we must address two threshold matters: mootness and forfeiture.

¶ 30                                    *Mootness*

¶ 31     In his motion for relief, the defendant asserted that his 30-day imprisonment sanction "began on or before September 13, 2024." The defendant had already served those 30 days when he filed his notice of appeal on October 15, 2024. His appeal was moot before it began. See, *e.g.*, *People v. Tibbs*, 2025 IL App (4th) 240378, ¶¶ 9, 15 (holding that, where the defendant had served his 90-day jail sentence, his subsequent appeal was moot).

¶ 32     Generally, reviewing courts do not decide moot questions. *In re V.S.*, 2025 IL 129755, ¶ 54; accord *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004) ("courts of review will generally not decide abstract, hypothetical, or moot questions"). The appellate court held that the public interest exception to mootness applied here, and we agree.

¶ 33     The public interest exception permits review of an otherwise moot question when "the magnitude or immediacy of the interests involved warrants action by the court." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129,

---

[1]Our holding is limited to the sanctions order before us. That is, we hold only that the trial court's order under section 110-6(f)(2) (725 ILCS 5/110-6(f)(2) (West 2022)), which imposed a 30-day imprisonment sanction and necessarily affected the defendant's liberty, was a final and appealable order. We make no comment on whether sanctions orders under sections 110-6(f)(1) (*id.* § 110-6(f)(1)) or 110-6(f)(4) (*id.* § 110-6(f)(4)) are final and appealable.

¶ 12. The exception is a narrow one, applicable only when there has been a clear showing that (1) the question is substantial and important to the public, not simply the parties, (2) an answer to the question will provide authoritative guidance for state and local government officials, and (3) the question is likely to recur. See *People v. Morgan*, 2025 IL 130626, ¶ 16; *Felzak v. Hruby*, 226 Ill. 2d 382, 393 (2007).

¶ 34 The question in this case—whether the defendant was entitled to good-conduct credit under the Behavior Allowance Act against his 30-day imprisonment sanction under section 110-6(f)(2)—is clearly substantial and important to the public. In considering whether an answer to the question will provide authoritative guidance to state and local officials, this court looks to whether the law is in disarray or conflicting precedent exists. *Commonwealth Edison*, 2016 IL 118129, ¶ 16; accord *In re Shelby R.*, 2013 IL 114994, ¶ 19 ("When considering whether the second criterion for application of the public interest exception has been satisfied, this court has emphasized the importance of examining the state of the law as it relates to the moot question."). For that reason, issues of first impression generally do not satisfy the public interest exception. *Commonwealth Edison*, 2016 IL 118129, ¶ 17. Here, however, we are faced with a situation in which a reviewing court would never be able to resolve the issue. Because section 110-6(f)(2) limits a term of imprisonment in the county jail to 30 days, the issue will always be moot by the time a reviewing court has a chance to rule. Thus, absent a decision from a reviewing court despite the issue's mootness, there will never be an answer to this question, and the law will remain in disarray with different trial court judges potentially applying the law differently. Accordingly, this case presents the rare situation in which authoritative guidance from this court is needed, even though the issue is one of first impression. And the question clearly is likely to recur as defendants violate conditions of their pretrial release and trial courts consider appropriate sanctions. We reiterate that the public interest exception is narrow, and we hold only that its application to the specific issue here is warranted.

¶ 35 *Forfeiture*

¶ 36 In his response brief, the defendant insists that the State forfeited our consideration of the Behavior Allowance Act issue because the State failed to raise

- 10 -

that issue before the appellate court. The appellate court observed that the State did not address the good-conduct credit issue in its response brief below and concluded that the State "forfeited any argument that defendant was not entitled to credit." 2025 IL App (2d) 240616, ¶ 19. While that proposition may have been correct for the appellate court, it is not correct for this court.

¶ 37    Where the appellate court reverses the judgment of the trial court and the appellee in the appellate court brings the case to this court as the appellant, that party may raise any issues properly presented by the record in support of the trial court's judgment, even if those issues were not raised before the appellate court. *People v. Gray*, 2024 IL 127815, ¶ 19 (citing *People v. Artis*, 232 Ill. 2d 156, 164 (2009)). That is precisely what happened in this case. The State did not forfeit our consideration of the Behavior Allowance Act issue. We finally turn to the merits of that issue.

¶ 38    The issue presented in this case requires us to interpret section 3 of the Behavior Allowance Act, as well as various provisions of article 110 of the Code of Criminal Procedure. As we have frequently restated, our primary objective in construing a statute is ascertaining the intent of the legislature. *People v. Ramirez*, 2023 IL 128123, ¶ 13. The language of the statute is the best indication of the legislature's intent, and if the plain and ordinary meaning of that language is clear, our inquiry ends. *Id.* This court may not resort to other aids of statutory interpretation (see *People v. Watkins-Romaine*, 2025 IL 130618, ¶ 25) nor depart from the language of the statute by interjecting exceptions, limitations, or conditions that the legislature did not include (see *Ramirez*, 2023 IL 128123, ¶ 13). On issues of statutory interpretation, our review is *de novo*. *Id.*

¶ 39    Section 3 of the Behavior Allowance Act provides:

"The good behavior of any person who commences a sentence of confinement in a county jail for a fixed term of imprisonment after January 1, 1987 shall entitle such person to a good behavior allowance, except that: (1) a person who inflicted physical harm upon another person in committing the offense for which he is confined shall receive no good behavior allowance; and (2) a person sentenced for an offense for which the law provides a mandatory minimum sentence shall not receive any portion of a good behavior allowance that would reduce the sentence below the mandatory minimum; and (3) a person sentenced

- 11 -

to a county impact incarceration program; and (4) a person who is convicted of criminal sexual assault under subdivision (a)(3) of Section 11-1.20 or paragraph (a)(3) of Section 12-13 of the Criminal Code of 1961 or the Criminal Code of 2012, criminal sexual abuse, or aggravated criminal sexual abuse shall receive no good behavior allowance. The good behavior allowance provided for in this Section shall not apply to individuals sentenced for a felony to probation or conditional discharge where a condition of such probation or conditional discharge is that the individual serve a sentence of periodic imprisonment or to individuals sentenced under an order of court for civil contempt.

\* \* \*

The prisoner shall receive one day of good behavior allowance for each day of service of sentence in the county jail, and one day of good behavior allowance for each day of incarceration in the county jail before sentencing for the offense that he or she is currently serving sentence but was unable to comply with the conditions of pretrial release before sentencing \*\*\*." 730 ILCS 130/3 (West 2022).

¶ 40 The State argues that a 30-day imprisonment sanction under section 110-6(f)(2) is not a "sentence" under the Behavior Allowance Act. The defendant responds that a 30-day imprisonment sanction under section 110-6(f)(2) is not listed as one of the exceptions in the Behavior Allowance Act to which good-conduct credit does not apply. We believe that the State's position is dispositive.

¶ 41 Subject to several exceptions, none of which are relevant here, section 3 of the Behavior Allowance Act creates a presumption of good-conduct credit for "any person who commences a sentence of confinement in a county jail." Section 5-1-19 of the Unified Code of Corrections defines "sentence" as "the disposition imposed by the court on a convicted defendant." 730 ILCS 5/5-1-19 (West 2022). Here, the defendant had not been convicted of any of the three drug offenses with which he was initially charged when the trial court entered its sanctions order. Simply put, he never commenced a sentence as that term is defined by statute, so he was not entitled to good-conduct credit on his 30-day imprisonment sanction.

¶ 42 The Behavior Allowance Act, however, does offer the defendant good-conduct credit for those 30 days. The Act provides that "a prisoner" shall receive one day

of good-conduct credit "for each day of incarceration in the county jail before sentencing for the offense that he or she is currently serving sentence but was unable to comply with the conditions of pretrial release before sentencing." 730 ILCS 130/3 (West 2022). That is, if the defendant is later convicted of any of the underlying drug offenses, any good-conduct credit that he earned during his 30-day imprisonment sanction will apply against his ultimate sentence. As the State aptly notes, "Unless and until a defendant who serves a pretrial jail sanction is sentenced to imprisonment following conviction, *** there is no sentence to which good-conduct credit can be applied."

¶ 43    The Behavior Allowance Act's exceptions clarify the legislature's intent that good-conduct credit only applies to sentences, not sanctions. Section 3 of the Act denies credit to "a person who inflicted physical harm upon another person in committing the offense for which he is confined," and such a person would only be confined following sentencing. *Id.* Additionally, section 3 also denies credit to "a person sentenced for an offense for which the law provides a mandatory minimum sentence," "a person sentenced to a county impact incarceration program," "individuals sentenced for a felony to probation or conditional discharge where a condition of such probation or conditional discharge is that the individual serve a sentence of periodic imprisonment," and "individuals sentenced under an order of court for civil contempt." *Id.* The common part of those exceptions is the word "sentenced." The defendant is correct that a 30-day imprisonment sanction under section 110-6(f)(2) is "not one of the six express exceptions to the allowance of good time credit." A section 110-6(f)(2) sanction could not be one of the exceptions because a section 110-6(f)(2) sanction is not a sentence.

¶ 44    The defendant's attempt to compare his 30-day imprisonment sanction to a sentence for direct criminal contempt is unavailing. The defendant asserts that, because the Behavior Allowance Act applies to criminal contempt sentences, it should apply to section 110-6(f)(2) sentences. See *Kaeding*, 281 Ill. App. 3d at 928 ("Plaintiff was sentenced for direct criminal contempt, and, as none of the exceptions enumerated in the [Behavior Allowance] Act apply, he must be accorded day-for-day good behavior allowance ***."); *Russell*, 237 Ill. App. 3d at 314-15 ("The absence of criminal contempt as an exception indicates the legislature viewed this offense as one which should have the opportunity to receive good time for good behavior while in jail.").

¶ 45    While the order imposing an imprisonment sanction on the defendant and an order imposing an imprisonment sentence on a contemnor bear some similarities for jurisdictional purposes, the likeness ends there. In all other respects, proceedings on the State's petition for sanctions and proceedings on a contempt petition are markedly different. "Whether a party is guilty of criminal contempt is a question of fact for the fact finder and the burden of proof is beyond a reasonable doubt." *People v. Bailey*, 235 Ill. App. 3d 1, 4 (1992); see *People v. Lindsey*, 199 Ill. 2d 460, 471 (2002) (stating that "[a] person who is charged with indirect criminal contempt *** is entitled to constitutional protections that are afforded to any other criminal defendant," including "the privilege against self-incrimination, the presumption of innocence, the State's burden to prove the charge beyond a reasonable doubt, the right to counsel, the right to a public trial, the right to confront witnesses and to compel testimony, the right to be present at trial, and the right to testify or to remain silent"). In seeking a sanction under section 110-6(f)(2), the State must prove that the defendant violated a condition of pretrial release only by clear and convincing evidence.

¶ 46    We hold that, because the defendant's 30-day imprisonment sanction was not a sentence under section 3 of the Behavior Allowance Act, he was not entitled to good-conduct credit against that sanction.

¶ 47                                    CONCLUSION

¶ 48    For the reasons that we have stated, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.


¶ 49    Appellate court judgment reversed.

¶ 50    Circuit court judgment affirmed.